IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WILLIAM CADDICK, STEPHEN HOPKINS**, individually and on behalf of all similarly situated individuals, <br><br> *Plaintiff* <br><br> v. <br><br> **TASTY BAKING COMPANY,** <br><br> *Defendant* | Case No. 2:19-cv-02106-JDW |

## <u>MEMORANDUM</u>

The parties to this case ask the Court for preliminary approval of a proposed settlement of the collective claims under the Fair Labor Standards Act and class claims under Pennsylvania, New Jersey, and Maryland state law. After reviewing the facts and the proposed agreement, the Court grants the motion for preliminary approval and preliminarily certifies three classes for claims under state laws. However, the Court also concludes that the confidentiality provision in the proposed agreement would frustrate the purpose of the FLSA, so the Court will narrow it.

**I.  BACKGROUND**

    **A.  Factual Allegations**

Tasty manufactures, distributes, and sells baked products. Tasty entered into contracts with individual distributors, including William Caddick, Stephen Hopkins, Raymond Keeler, and Anthody Bertino (the "Class Reps"), who purchase distribution rights to sell and distribute Tasty products to customers. The Class Reps operate in Pennsylvania, New Jersey, or Maryland.

The Class Reps allege that Tasty exerts significant control over the distributors' work. Tasty determines product prices, negotiates with retail customers regarding pricing and merchandising, adjusts orders, and dictates how distributors stock shelves and participate in marketing initiatives. The Class Reps also allege that Tasty pays distributors based on a "complicated system" in which distributors purchase the products from Tasty at prices that Tasty sets. (ECF No. 1, ¶ 19.) Once a distributor sells the products to the customer, the distributor receives credit for the products' ultimate sale price, plus a commission if applicable. The Class Reps contend that Tasty and store customers negotiate this price without any meaningful input from distributors.

Tasty classifies distributors, including the Class Reps, as independent contractors. As a result, Tasty makes certain deductions to distributors' weekly pay and does not pay them overtime. The Class Reps argue, however, that Tasty should have classified them as employees and seek damages for unpaid overtime wages under the FLSA and reimbursement for deductions that they contend were unlawful under Pennsylvania, New Jersey, or Maryland law.

## B.     Procedural History

Messrs. Caddick and Hopkins filed the initial complaint in this Court on May 15, 2019, on behalf of themselves and a class of distributors. In their Complaint, they alleged claims for unpaid overtime under the FLSA, improper pay deduction under the Pennsylvania Wage Payment and Collection Law, and recovery of certain expenses under the theory of unjust enrichment. The Court dismissed Plaintiffs' unjust enrichment claim on December 17, 2019. On January 24, 2020, the Court granted a motion for conditional certification of the FLSA claims. The FLSA Collective Action is defined as "[a]ll persons in the United States who, pursuant to a 'Distribution Agreement' or a similar written contract, are or have performed work as 'Distributors' for Tasty Baking

Company during the period commencing three years prior to the commencement of this action through the close of the Court-determined opt-in period and who file a consent to join this action pursuant to 29 U.S.C. § 216(b)." There are currently 56 collective action members.

Mr. Bertino filed a case in the District of New Jersey, alleging class claims under the New Jersey Wage and Payment Law. On November 17, 2020, in light of the parties' settlement discussions, the New Jersey Court transferred that action to this Court, and the Court consolidated the cases. On February 16, 2021, the Class Reps filed a Second Amended Complaint that adds Mr. Keeler as a party. Mr. Keeler brings Maryland Wage and Payment Collection Law claims on behalf of himself and a class of Maryland distributors. All Class Reps premise their claims on the allegation that Tasty improperly classifies its distributors as independent contractors.

**C.     The Settlement**

As a result of their negotiations, the Parties agreed to a settlement that includes monetary and non-monetary relief to the Class Reps and the classes they seek to represent. The settlement includes any individual who operated under a "distributor agreement with Tasty during a Covered Period out of a warehouse in either Pennsylvania, New Jersey, or Maryland; and who did not previously sign individually, or on behalf of a business entity, a distributor agreement or an amendment containing an arbitration agreement with a class action waiver." (ECF No. 62-2 at ¶ 3.6.) There are 119 individuals in the Pennsylvania class, 54 individuals in the New Jersey class, and 53 in the Maryland class. The settlement also covers those 56 individuals who opted into the FLSA action.

Pursuant to the terms of the settlement, Tasty will create a total settlement fund of $3,150,000, which provides: (i) payment to Class and Collective Members; (ii) service award to each of the named plaintiffs for $5,000 each; (iii) attorneys' fees of $1,050,000. In exchange,

Plaintiffs and class members who choose to participate in the settlement agree not to disclose the final settlement amount and to release Tasty from any past claims based on the alleged misclassification of putative class members and FLSA collective members as independent contractors.

Additionally, the settlement fund includes a payment of $3,500 each to current distributors who sign, date, and cash their settlements as consideration for agreeing to the terms of the arbitration agreement. The arbitration agreement adds alternative dispute procedures and includes a class action waiver. The Parties have agreed on a third-party settlement administrator who will provide notice to all the members of the FLSA collective and the class actions.

## II.    LEGAL STANDARD

Review of proposed Rule 23 class settlement typically proceeds in two steps: (1) a preliminary approval and (2) a subsequent fairness hearing. *See In re Nat'l Football League Players' Concussion Inj. Litig.*, 961 F. Supp. 2d 708, 713–14 (E.D. Pa. 2014). Although Rule 23 process governs class action settlements and not FLSA collective actions, courts in this Circuit apply the two-step process to FLSA claims. *See, e.g., Williams v. Aramark Sports, LLC*, No. CIV.A. 10-1044, 2011 WL 4018205, at *9 (E.D. Pa. Sept. 9, 2011) ("For essentially the same reasons the Court found that the Rule 23 requirements were met, the Court also finds that the FLSA collective action requirements are met in this case."); *Hall v. Accolade, Inc.*, No. CV 17-3423, 2019 WL 3996621, at *3 n. 2 (E.D. Pa. Aug. 23, 2019)(preliminarily approving FLSA collective action based on two-step Rule 23 approval process).

Preliminary approval of a proposed class action settlement is left to the discretion of the trial court. *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 317 (3d Cir. 1998). "The fair, reasonable and adequate standard is lowered, and the court is required to

determine whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies. . . ." *Nat. Football League,* 961 F. Supp. 2d at 714 (quoting another source). Nevertheless, "[p]reliminary approval is not simply a judicial 'rubber stamp' of the parties' agreement." *Id.* Rather, it is "based on an examination of whether the proposed settlement is 'likely' to be approved under Rule 23(e)(2)." *Wood v. Saroj & Manju Invs. Philadelphia LLC*, No. CV 19-2820-KSM, 2020 WL 7711409, at *10 (E.D. Pa. Dec. 28, 2020) (citing Fed. R. Civ. P. 23(e)(1)(B)(i) and other sources).

Where settlement precedes class certification, a court may preliminarily certify the class for purposes of providing notice. *See In re Nat. Football League Players Concussion Inj. Litig.*, 775 F.3d 570, 581-82 (3d Cir. 2014); *see also Amchem v. Windsor*, 521 U.S. 591, 620-22 (1997)). Certification at this stage is not final. *See In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 476 (E.D. Pa. 2010) (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods.*, 55 F.3d 768, 786 (3d Cir. 1995)). "Final certification *vel non* of the class is determined by the court at the same time as the court rules on whether the final settlement agreement is to be approved." *Id*.

This Court's prior FLSA conditional certification (ECF No. 42-43) is sufficient at the preliminary approval stage to permit the FLSA collective members to receive the appropriate court-approved notice of this settlement. But the Court has yet to certify state law classes. Accordingly, the Court will first analyze whether to certify the state law classes and then whether to approve the terms of the proposed Settlement Agreement preliminarily.

### III.  DISCUSSION

####   A.  Class Certification

To succeed on a class certification motion, a plaintiff must satisfy all four requirements of Rule 23(a) and at least one subsection of Rule 23(b). *See Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 183 (3d Cir. 2001). Rule 23(a) requires a showing of: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. *See* Fed. R. Civ. P. 23(a). If these four requirements are satisfied, a plaintiff must show that at least one subsection of Rule 23(b) is met. In this case, Plaintiffs seek certification pursuant to Rule 23(b)(3). Rule 23(b)(3) contains two explicit requirements: predominance and superiority. *See Carrerra v. Bayer Corp.*, 727 F.3d 300, 305 (3d Cir. 2013). Courts conducting this anlaysis as part of a preliminary approval motion can conduct a "less rigorous analysis" that will be required at the final approval stage. *In re: Amtrak Train Derailment In Philadelphia, Pa.*, No. 15-MD-2654, 2016 WL 1359725, at * 4 (E.D. Pa. Apr. 6, 2016).

#####     1.  Rule 23(a) factors

######       a.  Numerosity

To satisfy the numerosity requirement, a plaintiff must show that the proposed class is so numerous that joinder of all members is impracticable. This generally requires more than 40 class members. *See In re Modafinil Antitrust Litig.*, 837 F.3d 238, 249-50 (3d Cir. 2016). Plaintiffs have shown that each state class includes more than 40 members, making Joinder not practicable.

######       b.  Commonality

The commonality requirement requires a plaintiff to demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality does not require the perfect identity of questions of law or fact among all class members. *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015). Instead, a plaintiff seeking class certification must demonstrate

that his claims "depend upon a common contention," the resolution of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 US 338, 350 (2011). There can be legal and factual differences among the class members, as long as the defendant subjected them all to the same harmful conduct. The commonality bar is not a high one. *See Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013).

The Class Reps have cleared this low bar. For each of their proposed classes, there are at least two common questions: (1) whether class members were misclassified as independent contractors; and (2) whether Tasty took improper deductions from class members in violation of Pennsylvania, New Jersey, or Maryland state law.

      **c.**     **Typicality**

The typicality factor aids a court in determining whether "maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interest of the class members will be fairly and adequately protected in their absence." *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 594 (3d. Cir. 2012) (citation omitted). A plaintiff can meet this requirement when his claims "arise from the same alleged wrongful conduct." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004). To determine whether a named plaintiff is so different as to prevent a finding of typicality, a court must address three distinct concerns: "(1) the claims of the class representative must be the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class." *Id.* at 598. The Third

Circuit has set a "low threshold" for typicality, such that even "relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016) (quotes omitted).

The Class Reps satisfy the typicality requirement. They worked as distributors in their respective states and claim that Tasty misclassified them as independent contractors rather than employees. This is the same issue that affects all members of each putative class. Moreover, no unique defense applies only to class representatives. Finally, class representatives' interests are sufficiently aligned with the class members' interests because both seek the wage and hour protections of their respective state laws.

### d. Adequacy

This final 23(a) factor considers both the plaintiff's and counsel's adequacy to represent the class. "Whether adequacy has been satisfied 'depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class.'" *McDonough v. Toys R Us, Inc.*, 638 F. Supp. 2d 461, 477 (E.D. Pa. 2009) (quoting *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007)). "The second factor 'seeks to uncover conflicts of interest between named parties and the class they seek to represent.'" *Id.* (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004)).

The Court sees nothing to call into question the adequacy of class representatives. They assert the same claims as class members and are not in any way antagonistic to other members. The Court also concludes that their counsel easily satisfies the adequacy threshold. Class counsel

has experience prosecuting class actions, and at least one other court in this district has found class counsel adequate. *See Wood*, 2020 WL 7711409, at *6 ("Saltz, Mongeluzzi & Bendesky, P.C.—are qualified to 'fairly and adequately represent the interests of the class.'").

### 2. Rule 23(b) Factors

#### a. Predominance

Predominance requires the Court to find "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotation marks omitted). The predominance requirement "does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (internal punctuation omitted). Nevertheless, "[t]o assess whether predominance is met at the class certification stage, a district court must determine whether the essential elements of the claims brought by the putative class are 'capable of proof at trial through evidence that is common to the class rather than individual to its members.'" *Gonzalez v. Corning*, 885 F.3d 186, 195 (3d Cir. 2018).

Plaintiffs bring claims for violations of their respective state's wage laws. Each claim's threshold question is whether Tasty properly classified its distributors as independent contractors rather than employees under the specific test applicable to that state law. Although the tests vary, the New Jersey, Maryland, and Pennsylvania tests each emphasize the employer's right to exercise

9

control over the employee. *See, e.g., Williams v. Jani-King of Phila. Inc.*, 837 F.3d 314, 319-21 (3d Cir. 2016) ("[T]he right to control, rather than actual control, is the most important of the factors."); *Baltimore Harbor Charters, Ltd. v. Ayd*, 780 A.2d 303, 318-19 (Ct. App. Md. 2001) ("In applying these factors, the court emphasized that the most crucial consideration is the right to exercise complete control over the work, including its details.") (quoting another source). Likewise, "[i]n order to satisfy part A of the [New Jersey's] 'ABC' test, the employer must show that it neither exercised control over the worker, nor had the ability to exercise control in terms of the completion of the work." *Hargrove v. Sleepy's, LLC*, 106 A.3d 449, 459 (N.J. 2015).

Thus, common questions will predominate over individual inquiries in determining whether Tasty properly classified distributors as independent contractors. The focus in resolving these claims will be on the right to control. Distributor agreements and other documents regarding Tasty's policies are common to the class and shed light on whether Tasty exercised control over its distributors. *See, e.g. Carr v. Flowers Foods, Inc.*, No. CV 15-6391, 2019 WL 2027299, at *16 (E.D. Pa. May 7, 2019) ("[T]he right to control is susceptible to class-wide proof, based on the Distributor Agreements and Flowers' common policies regarding the large chain accounts, training, and oversight."). Accordingly, predominance inquiry is satisfied for each state law claim.

### b. Superiority

The superiority analysis calls for a determination that a class action is the best method of achieving a "fair and efficient adjudication of the controversy." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154 (3d Cir. 2001), *as amended* (Oct. 16, 2001) (citing Fed. R. Civ. P. 23(b)(3)). This requires a "balance, in terms of fairness and efficiency, [of] the merits of a class action against those of 'alternative available methods' of adjudication." *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 632 (3d Cir. 1996) (citing another source). In determining whether a

class action is the superior method to adjudicate a controversy, courts should consider: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D).

As applied to state law classes, these factors weigh in favor of class litigation. The number of class members, the common interest of class members, and the prevalence of common questions of law and fact make class action a more efficient vehicle for resolving these claims. Additionally, concentrating all three class actions in this Court results in considerable efficiency gains given the many similar issues across the claims. Plaintiffs satisfied this and other class action requirements. The Court will, therefore, preliminary certify the Pennsylvania, Maryland, and New Jersey classes pursuant to Rule 23(b)(3).

### B. Proposed Settlement Agreement

#### 1. Rule 23(e) Factors

"In evaluating a class action settlement under Rule 23(e), a district court determines whether the settlement is fundamentally fair, reasonable, and adequate." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 592 (3d Cir. 2010) (citing Fed. R. Civ. P. 23(e)). In making this determination, district courts consider whether:

>     (A) the class representatives and class counsel have adequately represented the class;
>     (B) the proposal was negotiated at arm's length;
>     (C) the relief provided for the class is adequate, taking into account:
>         (i)   the costs, risks, and delay of trial and appeal;
>         (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

11

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and
  (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23.

### a. Adequate representation

This factor focuses "on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018). Here, class counsel expanded considerable time and effort on this case, engaged in extensive discovery, "including reviewing and analyzing a substantial volume of documents, Tasty's business model, the bakery delivery business and the nature of the distributors' work." (ECF No. 62-1 at 14.) Based on this, the counsel fully evaluated the strengths and weaknesses of the claims and defenses before reaching the proposed settlement agreement. (*Id.* at 13-14.) Thus, this factor weighs in favor of preliminary approval.

### b. Arm's length negotiation

The parties agreed to settle this case after a full-day mediation session and a series of calls with a mediator. "[T]he participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties." *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, No. 15-2460, 2016 WL 4766079, at *6 (E.D. Pa. Sept. 13, 2016) (citation and quotation omitted). This factor weighs in favor of preliminary approval.

### c. Adequacy of relief

#### i. Costs, risks, and delay of trial

This factor balances the "relief that the settlement is expected to provide to class members" against "the cost and risk involved in pursuing a litigated outcome." Fed. R. Civ. P. 23 Advisory

Committee Notes (Dec. 1, 2018). Plaintiffs acknowledge the risks of proceeding with their claims to the certification, summary judgment, and trial stages of this litigation. These include: (1) whether plaintiffs can establish that they are employees and not independent contractors; (2) whether any of the FLSA overtime exemptions apply; and (3) whether plaintiffs receive "wages" under Pennsylvania, New Jersey, or Maryland law.

### ii.     The proposed method of distributing relief

Under this factor, the Court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims. . . [and] should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018). The settlement agreement provides individualized notices to each class member. Distributors who have not previously signed an arbitration agreement with a class action waiver will automatically receive notice of this settlement. Those who do not exclude themselves from the case will receive a check for their settlement share without having to file a claim. In other words, unless class members explicitly ask to be excluded, they will be paid. The settlement notice also explains how to raise objections and opt-out of the settlement.

### iii.     Terms of proposed attorney's fees

The proposed attorneys' fees are $1,050,000 out of $3,150,000. This equals a 33% attorney's fees award. Another court in this district has observed that "the average attorney's fees percentage in [class action settlements] was 31.71% and that the median fee award was 33.3%." *Williams*, 2011 WL 4018205, at *10 (citing *Boone v. City of Philadelphia*, 668 F. Supp. 2d 693, 714 (E.D. Pa. 2009)). Accordingly, all the considerations under this factor—whether relief is adequate—weigh in favor of preliminarily approving the settlement agreement.

### d. Whether the proposal treats class members equitably relative to each other

FLSA and state law class members will receive payments based on the same calculation. "The settlement share allocation is individually determined based on transactional data from each Settlement Class Member's distributorship and the number of weeks each such distributor worked within the applicable period. (ECF No. 62-1 at 18-19.)" This calculation takes into account both the estimated overtime and the deductions. Because the proposed settlement treats class members equitably relative to each other, this factor weighs in favor of preliminary approval.

### 2. Additional settlement terms

The present settlement agreement includes an arbitration agreement with a class action waiver as a condition to participating in the settlement. The Court must, therefore, determine whether the arbitration term is "fundamentally fair, reasonable, and adequate." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 592 (3d Cir. 2010) (citing Fed. R. Civ. P. 23(e)).

Here, parties assert that they negotiated the terms of the arbitration agreement and that "this negotiated exchange yeld[ed] an additional fair and reasonable term." (ECF No. 62-1 at 20.) And, upon the preliminary review of the arbitration agreement, the Court does not see "grounds to doubt its fairness or other obvious deficiencies" *In re Nat'l Football League Players' Concussion Inj. Litig.*, 301 F.R.D. 191, 198 (E.D. Pa. 2014). The arbitration agreement includes a direct additional payment of $3,500. Class members will be provided with a one-page summary explaining arbitration and Class Counsel will be available to fully inform class members about the pros and cons of arbitration. Moreover, courts in this circuit routinely find arbitration clauses enforceable in the employment context. *See, e.g., Zimmer v. CooperNeff Advisors, Inc.*, 523 F.3d 224, 229 (3d Cir. 2008); *Blair v. Scott Specialty Gases*, 283 F.3d 595, 604 (3d Cir. 2002).

### 3. FLSA factors

Congress enacted the FLSA to "protect all covered workers from substandard wages and oppressive working hours[.]" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981). Parties may settle FLSA claims by seeking district court approval. *See Kraus v. PA Fit II, LLC*, 155 F. Supp.3d 516. 522 (E.D. Pa. 2016). When evaluating settlements, a court first determines whether the settlement concerns a "bona fide dispute." *Id.* at 523 (quotation omitted). If a bona fide dispute exists, courts assess whether the settlement is fair and reasonable. *See Kauffman v. U-Haul Int'l, Inc.*, No. 16-cv-4580, 2019 WL 1785453, at *2 (E.D. Pa. Apr. 24, 2019) (citation omitted). And finally, courts must ensure that the settlement does not frustrate the FLSA's purpose. *Id.*

"A proposed settlement resolves a bona fide dispute where its terms 'reflect a reasonable compromise over issues, such as ... back wages, that are actually in dispute.'" *Kraus*, 155 F. Supp. 3d. at 523 (quotation omitted). "A dispute is 'bona fide' where it involves 'factual issues rather than legal issues such as the statute's coverage and applicability.'" *Flores v. Eagle Diner Corp.*, No. 18-cv-1206, 2019 WL 3943355, at * 9 (E.D. Pa. Aug. 21, 2019) (quotation omitted). "[F]or a bona fide dispute to exist, … there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented." *Kraus*, 155 F. Supp. 3d at 530.

This case presents a bona fide dispute. Plaintiffs (including the Class Reps and opt-in plaintiffs) submitted a claim for unpaid overtime wages under the FLSA based on Tasty misclassifying them as independent contractors. Tasty maintains that plaintiffs are independent contractors and denies the amount claimed as damages. Had this matter not settled, resolution of these issues would have involved a fact-intensive inquiry. The parties settled this case to avoid the risks and uncertainty of further litigation.

The settlement is also fair and reasonable. Courts in this circuit have held that the inquiry into whether a settlement should be approved under the FLSA "largely overlap[s]" with Rule 23 analysis. *Williams*, No. CIV.A. 10-1044, 2011 WL 4018205, at *9. As explained above, Rule 23 factors support preliminarily approving the proposed settlement.

Finally, the Court must determine whether the proposed settlement furthers or impermissibly frustrates the implementation of the FLSA in the workplace. Generally, courts find that all-encompassing release provisions that preclude plaintiffs from raising unrelated claims against their employer are too broad and frustrate FLSA's purpose. *See, e.g. Solkoff v. Pennsylvania State Univ.*, 435 F. Supp. 3d 646, 660 (E.D. Pa. 2020)("The broad release of claims that includes unrelated claims and claims unknown to the plaintiff frustrates the purpose of the FLSA. . . ."); *Howard v. Philadelphia Hous. Auth.*, 197 F. Supp. 3d 773, 779 (E.D. Pa. 2016)("If the Court blindly approved the waiver of "any and all Claims" "concerning the termination of Plaintiff's employment," the Court risks judicially endorsing a waiver of Plaintiff's other statutorily protected rights. . . . And such judicial endorsement exceeds the court's judicial approval role under the FLSA."). But release provisions that limit future claims to the specific litigation are sufficiently narrow to pass muster. *See, e.g., O'Mara v. Creative Waste Sols., LLC*, No. CV 19-2021, 2020 WL 2513571, at *6 (E.D. Pa. May 15, 2020); *Singleton v. First Student Mgmt. LLC*, No. CIV.A. 13-1744 JEI, 2014 WL 3865853, at *9 (D.N.J. Aug. 6, 2014). The release provision here releases Tasty from any past claims "based on the alleged misclassification [of collective action and class members] as independent contractors. . . ." (ECF 62-2 at ¶ 3.24.) Because the release is sufficiently tailored both temporally and factually to Plaintiffs' allegations in this litigation, the Court sees no issue with the release provision contained in the proposed settlement agreement.

Similarly, the arbitration agreement does not frustrate FLSA's purpose. The Supreme Court has held that arbitration agreements containing waivers of the right to bring class or collective actions over employment-related disputes are enforceable under the Federal Arbitration Act. *See Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018). In doing so, the Court noted that the FLSA allows agreements for individualized arbitration. *See id.* at 1626; *see also Gaffers v. Kelly Servs., Inc.*, 900 F.3d 293, 296 (6th Cir. 2018)("[B]ecause the FLSA does not "clearly and manifestly" make arbitration agreements unenforceable, we hold that it does not displace the Arbitration Act's requirement that we enforce the employees' agreements as written."). Thus, the Arbitration Agreement is acceptable.

The Court cannot say the same for the confidentiality provision of the settlement agreement, however. Generally, courts that have considered the issue have concluded that confidentiality agreements that prohibit plaintiffs from discussing settlement agreements with their coworkers are too broad and frustrate FLSA's purpose. *Compare Mabry v. Hildebrandt*, No. 14-cv-5525, 2015 WL 5025810, at *2–3 (E.D. Pa. Aug. 24, 2015) (disapproving confidentiality clause that allowed the plaintiff to disclose terms of agreement only with his "spouse, attorney, and/or accountant") *and Altenbach v. Lube Ctr., Inc.*, No. 08-cv-02178, 2013 WL 74251, at *3 (M.D. Pa. Jan. 4, 2013) (declining to approve settlement agreement prohibiting the plaintiff and class counsel from disclosing "any specific information concerning the Settlement with the Defendant, such as the settlement amount, to any person or agency") *with McGee v. Ann's Choice, Inc.,* No. CIV.A. 12-2664, 2014 WL 2514582, at *3 (E.D. Pa. June 4, 2014) (approving confidentiality clause that prohibited the plaintiff from speaking with media but otherwise permitted the plaintiff to share terms with "friends, family, employees, and individuals not affiliated with the media.").

The confidentiality agreement here prohibits plaintiffs from "publicizing or disclosing the specific monetary amounts each individual is to receive under this settlement, either directly or indirectly, . . . to any media, . . . the public generally, or any individual or entity." (ECF 62-2 at ¶ 15.12.) In its current state, the confidentiality agreement is too broad because the reference to "any individual or entity" extends to those that the settlement covers.

District courts reviewing proposed FLSA settlements may require litigants to limit the scope of the confidentiality agreement. *See O'Mara v. Creative Waste Sols., LLC*, No. CV 19-2021, 2020 WL 2513571, at *6 (E.D. Pa. May 15, 2020); *see also Bettenger*, 2015 W 279754, at *8. The Court will do so here. Therefore, the Court will approve the settlement only to the extent that the confidentiality agreement allows plaintiffs to discuss the terms of their settlement with other Tasty distributors. The Court recognizes that such an approval alters the Parties' deal, and it will give the Parties seven days to opt out of their settlement in light of this change.

### C.  Notice

#### a.  Rule 23(e) Factors

Under Rule 23, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).  Such notice

> "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."

*Id*.

The parties have agreed on separate notices for: (1) FLSA collective action members; (2) class members who are not FLSA opt-ins; and (3) distributors who are both state class and FLSA collective action members. Within this scheme, each proposed notice explains the nature of the

action and the terms of the settlement. Additionally, current distributors' notice will also include information about the arbitration and class action waiver agreement. The Court finds that these essential terms use simple and straightforward language and not legalese. The Court finds that the notice program is robust and is likely to ensure that all members receive notice of the claims and their rights with respect to the settlement.

IV. **CONCLUSION**

The Court will preliminarily approve the settlement, with the confidentiality clause modified as described. The parties shall have seven days from the date of this decision to inform the Court that they have opted out of the settlement in light of the Court's changes. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

April 12, 2021