## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM CADDICK, STEPHEN HOPKINS, and RAYMOND S. KEELER, individually and on behalf of all similarly situated individuals,<br><br>   *Plaintiffs*,<br><br>  v.<br><br>TASTY BAKING COMPANY<br><br>   *Defendant.* | Case No. 2:19-cv-02106-JDW |
| ANTHONY F. BERTINO JR., individually and on behalf of all similarly situated individuals*,*<br><br>   *Plaintiffs*,<br><br>  v.<br><br>TASTY BAKING COMPANY,<br><br>   *Defendant*. | Case No. 2:19-cv-02106-JDW |

## MEMORANDUM OF LAW IN SUPPORT OF
## JOINT MOTION FOR FINAL APPROVAL OF
## PROPOSED CLASS AND COLLECTIVE ACTION SETTLEMENT

**TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................... 1

II.     FACTUAL BACKGROUND .................................................................................. 2

III.    PROCEDURAL BACKGROUND ........................................................................ 3

    A.     The Litigation ................................................................................................. 3

    B.     Settlement Efforts ........................................................................................ 4

    C.     Settlement Agreement ................................................................................. 5

        1.     Monetary Terms: ................................................................................. 6

        2.     Non-Monetary Terms ......................................................................... 8

            a)     Amendment and Arbitration Agreement ......................................... 8

            b)     Distributor Review Panel .................................................................. 9

            c)     Distributor Advocate Position ........................................................ 10

            d)     Additional Program Changes ......................................................... 11

IV.     CLASS CERTIFICATION .................................................................................. 11

V.      NOTICE .................................................................................................................. 12

VI.     FINAL APPROVAL ............................................................................................. 13

    A.     The Rule 23(e) Factors Support Final Approval of the Settlement ...................... 15

        1.     Adequacy of Representation and Arms' Length Negotiations ................. 15

        2.     Adequacy of Relief .............................................................................. 17

        3.     The Settlement Treats Class Members Equitably Relative to Each Other 20

    B.     The *Girsh* Factors Support Final Approval of the Settlement. ............................. 21

        1.     Complexity, Expense, and Likely Duration of the Litigation .................. 21

        2.     Reaction of the Class to the Settlement .................................................... 21

        3.     Stage of the Proceedings and Amount of Discovery Completed .............. 22

        4.     Risks of Establishing Liability and Damages ........................................... 22

5.    Risk of Maintaining the Class Action Through Trial ............................... 23

6.    Ability of Defendants to Withstand a Greater Judgment .......................... 24

7.    Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and Range of Reasonableness of the Settlement Fund to a Possible Recovery in Light of all the Attendant Risks of Litigation ................................................................................................. 24

VII.    CONCLUSION ................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

PAGE(S)

Cases

*Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*,
    2016 WL 4766079 (E.D. Pa. Sept. 3, 2016) .......................................................................... 17

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) .................................................................................................. 15

*In re Baby Prods. Antitrust Litig.*,
    708 F.3d 163 (3d Cir. 2013) .................................................................................................. 14

*In re Cendant*,
    264 F.3d 201 (3d Cir. 2001) .............................................................................................. 13, 22

*In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig.*,
    333 F.R.D. 364 (E.D. Pa. 2019) ........................................................................................... 14

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) .................................................................................. 13, 14, 21, 22

*In re Linerboard Antitrust Litig.*,
    296 F. Supp. 2d 568 (E.D. Pa. 2003) ................................................................................... 22

*In re N.J. Tax Sales Certificate Antitrust Litig.*,
    750 F. App'x 73 (3d Cir. 2018) ........................................................................................ 15, 24

*In re Nat'l Football League Players Concussion Injury Litig.*,
    821 F.3d 410 (3d Cir. 2016) ........................................................................................... passim

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998) ............................................................................. 14, 22, 23, 24

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ........................................................................................... passim
*Myers v. Jani-King of Philadelphia, Inc.*,
    No. CV 09-1738, 2019 WL 4034736 (E.D. Pa. Aug. 26, 2019) .............................................. 20

*Rose v. Travelers Home and Marine Ins. Co.*,
    2020 WL 4059613 (E.D. Pa. July 20, 2020) ......................................................................... 17

*Taha v. Bucks Cty. Pennsylvania*,
    No. CV 12-6867, 2020 WL 7024238 (E.D. Pa. Nov. 30, 2020) .............................................. 14

*Vista Healthplan, Inc. v. Cephalon, Inc.*,
  2020 WL 1922902 (E.D. Pa. Apr. 21, 2020) ........................................................................ 24

*Williams*,
  2011 WL 4018205 ........................................................................................................... 16

*Wood v. Amerihealth Caritas Servs., LLC*,
  Nos. 17-3697, 19-2194, 2020 WL 1694549 (E.D. Pa. Apr. 7, 2020) ................................. 12, 16

Statutes

29 U.S.C. § 207(a)(1) .......................................................................................................... 18
29 U.S.C. § 216(b) ........................................................................................................... 4, 11
Md. Code Ann., Lab. & Empl. §§ 3-501 ............................................................................. 4
N.J. S.T. 34:11–4.1 ............................................................................................................. 4

Rules

Fed. R. Civ. P. 23 ................................................................................................. passim
Fed. R. Civ. P. 23(a)(4) ...................................................................................................... 15
Fed. R. Civ. P. 23(b)(3) ...................................................................................................... 25
Fed. R. Civ. P. 23(e) ............................................................................................... 13, 15, 21
Fed. R. Civ. P. 23(e)(2) ........................................................................................... passim
Fed. R. Civ. P. 23(e)(2)(A) ........................................................................................... 15, 16
Fed. R. Civ. P. 23(e)(2)(D) ............................................................................................... 20
Fed. R. Civ. P. 23(e)(3) ...................................................................................................... 14

## I.   <u>INTRODUCTION</u>

Plaintiffs William Caddick, Stephen W. Hopkins, Raymond S. Keeler, and Anthony F. Bertino, Jr. (collectively referred to as "Class Representatives," "Plaintiffs," or "Named Plaintiffs"), on behalf of themselves and any business entities through which they operated, and on behalf of Settlement Class Members and Tasty Baking Company ("Tasty" or "Defendant"), submit this Memorandum of Law in support of their Joint Motion for Final Approval of the Class & Collective Action Settlement. On April 12, 2021, the Court granted preliminary approval of the Class and Collective Action Settlement Agreement and Addendum (ECF No. 62-2, "Settlement Agreement"), preliminarily certified the Pennsylvania, Maryland, and New Jersey classes for settlement purposes only pursuant to Rule 23(b)(3), and approved the form and content of the Settlement Notice and Notice Program. ECF Nos. 66-67.  It is now time for this Court to determine pursuant to Rule 23(e) whether this Settlement should be granted final approval and the matter dismissed with prejudice.  Because the Settlement is fair, reasonable, and adequate, Plaintiffs respectfully ask this Court to grant final approval of the Settlement during the Fairness Hearing scheduled for August 12, 2021.

The Settlement creates a $3.15 million common fund that is allocated on a pro rata basis to Class Members.  Each Class Member shall receive a payment for the claims alleged in the Second Amended Complaint (ECF No. 61, "SAC") based on the weeks they worked during the applicable Covered Period, plus $3,500 for current distributor Class Members accepting the Amendment and Arbitration Agreement.  There are 281 Class Members, and 278 of them received direct mail Settlement Notice, which included their individualized gross payment from the Settlement.  The Settlement also includes non-monetary terms designed to enhance the Class Members' relationship with Tasty.  All benefits of the Settlement are delivered directly to the Class Member by direct mail without any form of claim process or submission pursuant to the final plan of allocation to be

1

submitted to the Court after the opt-out / objection deadline on June 26, 2021. At the time of this filing, no Class Member has opted out or objected to any term of the Settlement with 10 days remaining in the 60 days provided for opt-outs or objections. This positive response from the Class strongly affirms that the Settlement is fair, reasonable and adequate.

The Settlement fully complies with the requirements for court approval under Rule 23(e)(2). Class Members are fairly and adequately compensated through substantial monetary and non-monetary relief. The Settlement provides a reasonable alternative to the burdens and risks of continued litigation or possible appeals. The Parties, through their experienced counsel, carefully assessed the strengths and weaknesses of their respective positions and negotiated terms that reflect that assessment. Class Counsel fully endorses the Settlement and asks this Court to grant final approval.

## II.     FACTUAL BACKGROUND

Tasty Baking Company, headquartered in Philadelphia, Pennsylvania, bakes and produces various fresh-baked snack cakes, pastries, and baked goods under the Tastykake brand. ECF No. 61 at ¶¶ 9-10. Tasty contracts with distributors, who are Plaintiffs and Class Members, that purchase distribution rights to sell and distribute products to customers in a defined territory. ECF No. 66 at 1.

Plaintiffs allege that Tasty classified them as independent contractors when it should have classified them as employees. *Id*. at 2. Plaintiffs claim that Tasty exerts significant control over the distributors' work, including determining product pricing, negotiating with retail customers regarding pricing and merchandising, adjusting orders, and dictating the manner in which distributors stock shelves and participate in marketing initiatives. ECF No. 61 at ¶¶ 16-23. Plaintiffs also assert that distributors are paid under a "complicated system" where they purchase products from Tasty at a price set by Tasty and that they get credit for the sale price of the products

once they are sold to the customer, plus an additional amount, if applicable, but that Tasty and the store customer negotiate the price without any meaningful input from distributors. *Id* at ¶20.

Tasty denies these allegations, contends that distributors are not employees, but rather are properly classified independent contractors with whom Tasty contracts to sell and distribute bakery and snack products to customers. ECF No. 17, at pp. 2–3.  Because Tasty classifies distributors as independent contractors, they are not paid overtime for hours worked over 40 in a workweek. ECF No. 61 at ¶¶ 27-28.  Distributors are responsible for the expenses they incurred in connection with the operation of their distributorships. Some of these expenses were deducted from distributors' weekly settlement statements by Tasty. *Id*. at ¶¶ 21-23. Accordingly, Plaintiffs seek damages for unpaid overtime wages for all hours worked over forty per week during the relevant period under the FLSA and reimbursement for deductions that Plaintiffs contend were unlawful under Pennsylvania, New Jersey, or Maryland law, as applicable. At all times, Tasty has denied Plaintiffs' allegations, denied that it violated the law in any way, and denied that Plaintiffs or the individuals they seek to represent are entitled to the damages they seek.

## III.  <u>PROCEDURAL BACKGROUND</u>

### A.   **The Litigation**

Plaintiffs are current distributors who contracted with Tasty.  The initial complaint was filed by William Caddick and Stephen W. Hopkins on May 15, 2019, in this Court (Case No. 2:19-cv-02106-JDW) on behalf of themselves and a class of distributors with Tasty.  Plaintiffs asserted claims for unpaid overtime under the Fair Labor Standards Act ("FLSA"), for improper pay deductions under the Pennsylvania Wage Payment and Collection Law ("PWPCL"), and for recovery of certain expenses that they incurred under the theory of unjust enrichment.[1]

---

[1] Following Tasty's partial motion for judgment on the pleadings, Plaintiffs' unjust enrichment claim was dismissed on December 17, 2019. ECF No. 41.

Subsequently, Anthony F. Bertino, Jr. (through the same counsel) filed a class action lawsuit in the District of New Jersey (Case No. 1:20-cv-03752-NLH-AMD) under the New Jersey Wage and Payment Law ("NJWPL"), N.J. S.T. 34:11–4.1, *et seq*. On November 17, 2020, the *Bertino* case was transferred to the Eastern District of Pennsylvania for purposes of seeking approval of this Settlement, and on November 23, 2020 it was consolidated with the *Caddick* case (collectively, *Caddick* and *Bertino* are referred to as the "Action"). ECF No. 58. On February 16, 2021, Plaintiffs filed a Second Amended Complaint in the *Caddick* case, adding Raymond S. Keeler as a named Plaintiff asserting individual and class claims under the Maryland Wage and Payment Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501, *et seq*. ECF No. 61. Each of Plaintiffs' claims are premised on the allegation that Tasty improperly classifies its distributors as independent contractors rather than employees. Plaintiffs claim damages in the form of unpaid overtime for hours worked over forty in a week under the FLSA as well as alleged unlawful deductions under the PWPCL, NJWPL, or MWPCL, as applicable. *Id.*

On January 24, 2020, this Court granted Plaintiffs' motion for conditional certification of this case pursuant to § 216(b) of the FLSA. (Doc. 042.) The FLSA Collective Class was defined as "[a]ll persons in the United States who, pursuant to a 'Distributor Agreement' or a similar written contract, are or have performed work as 'Distributors' for Tasty Baking Company during the period commencing three years prior to the commencement of this action through the close of the Court-determined opt-in period and who file a consent to join this action pursuant to 29 U.S.C. § 216(b)." ECF Nos. 42-43. There are currently fifty-six (56) opt-in Plaintiffs in the Settlement who filed timely opt-in consents following the notice period.

**B.      Settlement Efforts**

The Parties have engaged in significant settlement discussions. On September 3, 2020, the Parties participated in a virtual formal full-day mediation. The Parties engaged Hunter H. Hughes,

Esquire to facilitate and assist in their arms-length negotiations during this session. Mr. Hughes is a highly-skilled mediator who has mediated scores of national, class, collective, and mass actions.[2]

This mediation covered the *Caddick* action and the *Bertino* action, which was then pending in the United States District Court for the District of New Jersey and was subsequently transferred to this Court and consolidated with the *Caddick* action for purposes of settlement adjudication. These cases involve the threshold issue of employment classification of distributors and assert claims for overtime and unauthorized deductions under the FLSA and applicable state laws. While the mediation included both cases, the Parties negotiated and evaluated the claims asserted, and defenses available, in each case.

At the conclusion of the mediation, the Parties' were unable to reach a compromise, but did agree to continue negotiations through Mr. Hughes after the mediation session. The Parties' discussions and negotiations continued over multiple conference calls and emails, ultimately resulting in the Parties reaching a comprehensive agreement that was executed on or about October 8, 2020. After additional negotiations through conference calls and emails among counsel, the Parties agreed to broaden the scope of the settlement to include the resolution of Maryland state law claims by addendum to the original Settlement Agreement. The key terms of the Settlement Agreement and Addendum (collectively, "Settlement Agreement") entered into by the Parties in this Action are detailed below, and the Settlement Agreement, including its exhibits. *See* ECF No. 62-2.

### C.     Settlement Agreement

The Settlement Agreement provides substantial monetary and non-monetary relief to Plaintiffs and Class Members. Specifically, the following persons are eligible to participate in the

---

[2] *See* HUNTER HUGHES, ESQ. ALTERNATIVE DISPUTE RESOLUTION, *https://hunteradr.com/cv.html*

settlement. First, any individual who operated under a Distributor Agreement with Tasty during a Covered Period,[3] who operated in the States of Pennsylvania, New Jersey, or Maryland, and who did not sign a new Distributor Agreement or Amendment containing the Arbitration Agreement with a class action waiver ("Class Members").  There are 119 individuals in the Pennsylvania Class, 54 individuals in the New Jersey Class, and 53 individuals in the Maryland Class.  Next, the settlement also covers those 56 individuals, many of who are also Rule 23 Class Members, in addition to the Named Plaintiffs, who under § 216(b) of the FLSA, filed in this Action signed, timely, and valid opt-in consent to join forms and whose participation and claims have not since been dismissed ("FLSA Collective Members").[4]

### 1.    Monetary Terms:

The settlement provides significant monetary relief to participating Class and FLSA Collective Members (hereinafter referred to as "Settlement Class Members" or "Settlement Class"). Specifically, Defendant have agreed to create a total settlement fund of $3,150,000, which provides: (i) payments to Settlement Class Members; (ii) Service Awards to each of the Named Plaintiffs in the amount of $5,000 each, subject to Court approval; (iii) attorneys' fees in the amount of $1,050,000 (which is 1/3 of the total settlement fund) plus expenses to Class Counsel (except for costs associated with notice and settlement administration, which shall be paid separately by Defendant), also subject to court approval; and (iv) additional payments of $3,500

---

[3] "Covered Period" was a negotiated term of the Settlement Agreement and means:
- For Pennsylvania claims, from May 15, 2016 through September 10, 2020;
- For New Jersey claims, from April 7, 2014 through September 10, 2020;
- For Maryland claims, from September 10, 2017 through September 10, 2020.

[4] There were an additional 50 distributors identified in Exhibit 10 to the Settlement Agreement who completed a valid opt-in form, but whose claims have been dismissed without prejudice as excluded from the Settlement Class. *See* ECF No. 68.

each to current distributors who are Settlement Class Members who sign, date, and cash their settlement checks as consideration for agreeing to the terms of the Amendment and Arbitration Agreement. The Settlement Notices approved by the Court describe the process by which a Class Member, including a Class Member who is also an FLSA Collective Member (but not a Named Plaintiff), may exclude themselves from the Settlement and, for those Class Members who are also FLSA Collective Members, how they may withdraw; and the process by which a pure FLSA Collective Member (who is not also a Class Member or Named Plaintiff) may withdraw. As a part of the Settlement, no Class Member will be required to submit an additional claim form to receive a share of the Settlement Fund.

The Settlement Fund shall be distributed based upon an allocation formula that recognizes the pro rata alleged damages of each Class Member, as more specifically discussed in Section 13.2 of the Settlement Agreement and in the Settlement Notices themselves. The proposed gross allocation for each Settlement Class Member was submitted and approved by the Court in granting preliminary approval. Each Settlement Notice included the Class Member's individualized gross payment from the Settlement Fund, which clearly stated the gross amount is prior to the payment of any Attorneys' Fees and Costs, Service Awards, costs associated with Settlement Notice and Administration, and the pro rata redistribution of any monies payable to Class Members who filed valid Exclusion Requests to the Settlement Class (excluding the $3,500 payable as consideration for the Amendment and Arbitration Agreement which reverts to Defendant). After the period in which a Class Member can excluded themselves expires on June 26, 2021, Class Counsel shall submit to the Court a final plan of allocation reflecting the net payouts for each Settlement Class Member to expedite payments to the Settlement Class and allow this Court to ensure the Settlement is fair, reasonable and adequate. Because the deadline set by the Court for the filing of this Motion

for Final Approval is prior to the deadlines to object or opt-out, this final plan of allocation shall be provided to the Court with a supplement addressing and responding to any valid opt-outs or objections received from any Class Member.

## 2.   *Non-Monetary Terms*

The Settlement also contains several significant non-monetary terms and changes to the independent distributor model used at Tasty, which were negotiated with the assistance of the mediator. These include: (1) an Amendment and Arbitration Agreement, in exchange for an additional $3,500; (2) implementation of a Distributor Review Panel; (3) creation of a Distributor Advocate position; and (4) additional program changes, all of which are discussed more fully below.

### a)   **Amendment and Arbitration Agreement**

As part of the Settlement, an Amendment to the Distributor Agreement, which adds alternative dispute procedures and incorporates an Arbitration Agreement, will be presented to all current distributor Class and FLSA Collective Members by the Settlement Administrator during the Notice Period. Such current distributors shall receive a separate additional $3,500 check from the Settlement Fund and upon signing, dating, and cashing their settlement checks shall be bound by this Amendment and Arbitration Agreement.  The specific terms of the Amendment and Arbitration Agreement are set forth in Exhibit 1 to the Settlement Agreement. *See* ECF No. 62-2. Only current distributor Class Members are eligible receive this additional payment as additional consideration for their agreement to the Amendment and Arbitration Agreement, which will be binding upon those who sign, date, and cash their settlement checks and do not opt out of the settlement. The settlement checks will specifically state that signing, dating, and cashing the settlement checks constitutes express acceptance of the Amendment and Arbitration Agreement. This Amendment and Arbitration Agreement, including pros and cons of arbitration generally, is

explained to current distributor Class Members in a one-page summary, which accompanies the Amendment and Arbitration Agreement they received in the Settlement Notices. Importantly, under the Arbitration Agreement, both parties agree to arbitrate all applicable claims against each other, Tasty agrees to pay for all costs and fees typically associated with arbitration, subject to the arbitrator's ability to award costs and fees to the prevailing party to the same extent as those costs/fees would be available in court, and distributors can recover the same damages as they could in court.

### b)  Distributor Review Panel

Defendant will establish and use a Distributor Review Panel at Tasty. As more fully explained in Exhibit 8 to the Settlement Agreement, the Distributor Review Panel is an internal dispute resolution process whereby a distributor may appeal to an internal review panel for resolution of contract-related disputes, such as whether a breach of contract notice was properly issued or whether the distributor failed to comply with good industry practice. The Panel will be charged with analyzing the dispute between the complainant-distributor and the bakery and rendering a decision based on its findings. The Panel will be composed of three (3) distributors who are not from the complainant-distributor's warehouse; a member of Tasty's sales management who is not involved with overseeing Tasty's business relationship with the complainant-distributor; and a representative from the corporate distributor relations department who has not been involved in advising Tasty on the matter under review by the Panel.

All Tasty distributors, area sales directors/market vice presidents, and corporate distributor enablement operations coordinators are eligible to participate in the distributor review program, with a few limited exceptions. In order to develop a pool of eligible volunteers for the Panel, the Distributor Advocate and the Distributor Enablement Operations Coordinator will solicit volunteers for service on an annual basis. Distributors are eligible to participate in the pool of

volunteers upon their submission of a signed Distributor Statement of Participation Form to the Distributor Advocate or Distributor Enablement Operations Coordinator and completing training provided by Tasty.

When the services of the Panel is required, Panel members are randomly selected from the established pool of eligible volunteers that is adjusted, if necessary, to prevent the occurrence of a conflict of interest, such as: an area sales director of the market area involved in the case, or a relative of the distributor, or a witness involved in the case, or an individual involved in the case. The distributor requesting Panel review randomly draws a team of five (5) individuals from the pool of eligible volunteers (three (3) distributors, one (1) sales management official and one (1) member of the corporate distributor relations team).

Once selected, the Panel reviews the dispute and makes a written determination. The Panel's decision is determined by a majority secret ballot vote.

### c) Distributor Advocate Position

As a part of the settlement, a Distributor Advocate position will be made available to distributors of Tasty. The Distributor Advocate will be responsible for addressing distributor issues that cannot be resolved at the local level. The Distributor Advocate will represent distributor interests and seek to resolve outstanding issues with Tasty management and the distributor. The Distributor Advocate will be certified by the International Ombudsman Association. Where practicable, the program will operate in accordance with the International Ombudsman Association Standards of Practice ("Standards") and the organization's Code of Ethics.[5]

---

[5] For example, the Distributor Advocate will not maintain confidentiality as suggested by the International Ombudsman Association because the distributor's identity must be shared with management in order to understand the situation and each party's business interests.

### d)   Additional Program Changes

The parties also negotiated several additional changes providing distributors more discretion over pricing, product placements, and service windows; greater ability to address unprofitable accounts and additional product orders; and increase communication between distributors and Oxford management. These enhancements, which are discussed fully in Exhibit 7 of the Settlement Agreement, provide tangible benefits to current distributors and represent material changes to the relationship between distributors and Tasty. These changes provide additional, material consideration that support the terms of the Settlement Agreement, including the release of claims therein.

## IV.   CLASS CERTIFICATION

On January 24, 2020, this Court granted Plaintiffs' motion for conditional certification of this case pursuant to § 216(b) of the FLSA. ECF No. 42. The FLSA Collective Class was defined as "[a]ll persons in the United States who, pursuant to a 'Distributor Agreement' or a similar written contract, are or have performed work as 'Distributors' for Tasty Baking Company during the period commencing three years prior to the commencement of this action through the close of the Court-determined opt-in period and who file a consent to join this action pursuant to 29 U.S.C. § 216(b)." *Id.* In response to this conditional certification order, there were 106 Distributors who submitted valid opt-ins, which have been identified in Exhibits 9 and 10 to the Settlement. ECF Nos. 62-2 at Exhs. 9-10. The Distributors identified in Exhibit 9 are the members of the FLSA Collective Class. The Distributors identified in Exhibit 10 opted in, but were subject to an existing arbitration agreement with Tasty and excluded from the Class Settlement and dismissed without prejudice on May 3, 2021. *See* ECF No. 68.

When granting preliminary approval of the Settlement, this Court also preliminarily certified the Pennsylvania, Maryland, and New Jersey classes for settlement purposes only

pursuant to Rule 23(b)(3). ECF No. 66 at 6-11.  For the reasons stated in the Court's preliminary approval order and the parties Supplemental Briefing on Class Certification, this preliminary order certifying these three state classes for settlement purposes only pursuant to Rule 23(b)(3) should be confirmed and made final at this time. *See* ECF Nos. 65-67.

## V.   **NOTICE**

Before granting final approval of a class action settlement, the court must determine whether the class received adequate notice. *See Wood v. Amerihealth Caritas Servs., LLC*, Nos. 17-3697, 19-2194, 2020 WL 1694549, at *4-*5 (E.D. Pa. Apr. 7, 2020).  The Notice Program, as approved by the Court was completed by the Settlement Administrator, Atticus Administration, on May 12, 2021, included the direct mailings of a personalized Settlement Notice to each Class Member.[6]  The CAFA Notices were also mailed on April 23, 2021. Each Settlement Notice and the Notice Program was approved by this Court in its April 12, 2021 Order. *See* ECF No. 66 at 18-19.

The Settlement Notice explained the nature of the action and the Settlement terms, including the total Settlement amount; the individual Class Members' gross allocation of the Settlement Amount; how the Class Members' allocation was calculated, the requested attorney's fees; the prospective release of Class claims; and procedures for participating, objecting, or opting out of the Settlement. The Settlement Notices, where applicable, also had information about the Arbitration Agreement and an election form for opting into the Arbitration Agreement.

On or around May 12, 2021, Atticus sent the Court-approved Settlement Notices to the 277

---

[6] Because the time for Class Members to exclude themselves or object does not expire until June 26, 2021, Plaintiffs shall supplement the record with the declaration of the Settlement Administrator providing these details and all necessary information concerning valid exclusions and objections on or before July 16, 2021.  At the time of this filing, no Class Member has submitted an objection or request to exclude themselves.

Class Members. Before sending the notice, Atticus reviewed and skip-traced Class data to verify the accuracy of the addresses. After the notices were mailed, 6 were returned as undeliverable and sent to Experian for further skip tracing. Updated addresses were obtained for three of those Class Members and the Settlement Notices for those Class Members were successfully re-mailed to the updated address.  Thus, only one Class Member has not received notice by direct mailing, and over 99% of Class Members received their personalized Settlement Notice by direct mail.[7]

The Court-approved and executed Notice Plan provided for the best practicable notice under the circumstances, successfully reaching all Class Members, except for three. The Settlement Notice also provided a clear, concise, and plain summary of the Class claims, the defenses, and Class Members' rights. As a result, the Court can now conclude the Notice Plan complied with Rule 23(c)(2)(B) and 23(e)(1)(B), so the Court can now address whether final approval of the Settlement should be granted.

## VI.   FINAL APPROVAL

Federal Rule of Civil Procedure 23 requires that a class action "may be settled ... only with the court's approval." Fed. R. Civ. P. 23(e).  Before granting final approval, a court must determine that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  This requires a court to "independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished." *In re Cendant*, 264 F.3d 201, 231 (3d Cir. 2001) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995)).

---

[7] Settlement Notice was also placed on the Settlement Websiwww.tastybakingsettlement.com, along with the Settlement Documents including the Settlement Agreement and Preliminary Approval Order.  The Notice on this settlement website also includes the deadlines for exclusions and objections, as we well as the Final Approval Hearing date and time.

"[T]here is an overriding public interest in settling class action litigation," *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004), and "[t]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Gen. Motors*, 55 F.3d at 784. Accordingly, "when evaluating a settlement, a court should be 'hesitant to undo an agreement that has resolved a hard-fought, multi-year litigation.'" *In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig.*, 333 F.R.D. 364, 378 (E.D. Pa. 2019) (quoting *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 175 (3d Cir. 2013)). "The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir. 2016) (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 299 (3d Cir. 1998)).

In determining whether a proposed class action settlement is fair, reasonable, and adequate, the recently amended provisions of Rule 23 require courts to consider whether:

> (A)   the class representatives and class counsel have adequately
>        represented the class;
> (B)   the proposal was negotiated at arm's length;
> (C)   the relief provided for the class is adequate, taking into
>        account:
>>        (i)    the costs, risks, and delay of trial and appeal;
>>        (ii)   the effectiveness of any proposed method of distributing relief to the class,
>>               including the method of processing class-member claims;
>>        (iii)  the terms of any proposed award of attorney's fees, including timing of
>>               payment; and
>>        (iv)   any agreement required to be identified under Rule 23(e)(3); and
> (D)   the proposal treats class members equitably relative to each
>        other.

Fed. R. Civ. P. 23(e)(2).

"The factors set forth in Rule 23(e)(2) augment, rather than replace, the traditional factors developed by courts to assess the fairness of a class action settlement." *Taha v. Bucks Cty. Pennsylvania*, No. CV 12-6867, 2020 WL 7024238, at *4 (E.D. Pa. Nov. 30, 2020) (citing Fed. R.

14

Civ. P. 23(e)(2) Advisory Committee Note ("The goal of [the Rule 23(e)(2)] amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.")). In the Third Circuit, courts analyze the factors propounded in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), which are (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risk of maintaining the class through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of the attendant risks of litigation. *Nat'l Football League*, 821 F.3d at 437. "A court may approve a settlement even if it does not find that each of these factors weighs in favor of approval." *In re N.J. Tax Sales Certificate Antitrust Litig.*, 750 F. App'x 73, 77 (3d Cir. 2018). Also, a presumption of fairness exists where, as here, a settlement was negotiated at arms' length, discovery was sufficient, the settlement proponents are experienced in similar matters, and there are few objectors. *Warfarin*, 391 F.3d at 535.

While there is some overlap between the Rule 23(e) and the *Girsh* factors, plus the analysis already undertaken by this Court in granting Preliminary Approval on April 12, 2021 (ECF No. 66), each factor will be addressed below.

A.   **The Rule 23(e) Factors Support Final Approval of the Settlement**

1.   <u>Adequacy of Representation and Arms' Length Negotiations</u>

Adequacy of representation under Rule 23(e)(2)(A) largely overlaps with the requirements for representation under Rule 23(a)(4). The facts before the Court are unchanged from April when this Court concluded Rule 23(a)(4) was satisfied by Class Representatives and Class Counsel. *See*

ECF No. 66 at 8-9. Thus, the Court's reasoning from April remains applicable now when it previously determined the Class Representatives and Class Counsel to be adequate.

Nonetheless, Class Representatives have continued to maintain their commitment to the Classes without antagonism. These Class Representatives likewise demonstrated their adequacy by fully participating in the case, providing their knowledge and understanding of the facts and assisting with investigation, discovery, and the terms of the Settlement. The adequacy of their representation is reinforced by the fact that no Class Members have objected or opted-out to date with only 10 days left in the 60-day objection and opt-out period, which supports the conclusion that the Settlement reflects Class Members' interests and that there is no conflict of interest. *See Williams*, 2011 WL 4018205 at *8 (finding that low rate of objections strongly supported approval of settlement). Similarly, Class Counsel continues to demonstrate their adequacy through vigorous prosecution of this case, which included complex motion practice concerning class certification proceedings. *See Wood*, 2020 WL 1694549 at *6 (holding that class counsel demonstrated adequacy through their work to investigate and increase the value of class members' claims). Rule 23(e)(2)(A) supports approval of the Settlement because Class Members have been adequately represented by the Class Representatives and Class Counsel.

The proposed settlement agreement is also the product of arms' length negotiations as this Court concluded in granting preliminary approval. *See* ECF No. 66 at 12. The posture of the litigation at the time settlement was reached supports that the Settlement was the product of serious and informed negotiations. Plaintiffs' Counsel conducted substantial discovery, including reviewing and analyzing a significant volume of documents, Tasty's business model, the bakery delivery business, and the nature of the distributors' work. Through discovery and motion practice, Plaintiffs' Counsel was able to fully analyze the merits of Plaintiffs' claims, strength of Tasty's

defenses, and the risks they faced in proving liability and damages. Accordingly, Plaintiffs have been able to evaluate their claims and this Court should find that the Settlement is the product of serious and informed negotiations.

Before reaching a comprehensive agreement, the Parties engaged in a formal, full-day mediation session with an experienced mediator. "[T]he participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties." *Rose v. Travelers Home and Marine Ins*. Co., 2020 WL 4059613, at *7 (E.D. Pa. July 20, 2020) (alterations in original) (quoting *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, 2016 WL 4766079, at *6 (E.D. Pa. Sept. 3, 2016)). Furthermore, after the mediation session, the Parties continued to negotiate through the mediator during a series of calls and emails. The Parties ultimately reached a resolution after extensive negotiations. Subsequently, after further detailed negotiations through counsel, the Parties agreed to expand the scope of the resolution to include Maryland state claims. Given this history, the Court should have no concern regarding collusion here.

These factors weigh in favor of approval.

### 2.    Adequacy of Relief

The proposed settlement agreement provides adequate relief for the class. *See* ECF No. 66 at 12-14. First, the "relief that the settlement is expected to provide to class members" is adequate when weighed against "the cost and risk involved in pursuing a litigation outcome." Fed. R. Civ. P. 23(e)(2) Advisory Committee Note. The settlement provides for a $3,150,000 common fund to benefit approximately 282 Class Members, including the Class Representatives, with all but three having received direct mail notice. Each Settlement Notice included an individualized gross allocation of this $3.15 million common fund based on the number of weeks each Class Member worked during the applicable Covered Period, and where applicable, $3,500 as consideration for

the Addendum and Arbitration Agreement attached as Exhibit 1 to the Settlement Agreement. The Settlement also provides current distributor Class Members with various non-monetary relief they could not recover in court. This further supports approval of the settlement here by providing various enhancements to the distributor program generally, set forth in Exhibit 12 to the Settlement Agreement, and a Distributor Advocate and Distributor Review Panel, as discussed in Exhibits 13 and 14, to help distributors resolve issues as they may arise informally.

To determine adequacy of the proposed settlement, the Court must also evaluate the relative strength of plaintiffs' case on the merits and the existence of difficulties of proof or strong defenses. *See Warfarin*, 391 F.3d at 538 (instructing that upon final approval the court must "evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case"). Plaintiffs assert that, because they are employees for purposes of the FLSA, the FLSA Collective Members are entitled to overtime premium pay for hours worked over 40 per week. *See* 29 U.S.C. § 207(a)(1).  Further, Plaintiffs assert that the Pennsylvania, New Jersey, or Maryland Class Members are employees for purposes of the PWPCL, NJWPL, and MWPCL, as applicable, and thus they are entitled to reimbursement for certain alleged unauthorized deductions from their pay.

Plaintiffs believe they have substantial evidence proving that the FLSA Collective Members and Class Members were employees under the FLSA and the PWPCL, NJWPL, and MWPCL, as applicable.  As such, Plaintiffs believe they would prevail on the threshold question of whether they are employees entitled to the protections of the FLSA and the PWPCL, NJWPL, and MWPCL, as applicable.  Tasty, of course, denies that Plaintiffs would prevail and believe their defenses on the merits are strong.  Tasty intends to assert a vigorous defense to the threshold question of whether Class Members are independent contractors versus employees.

18

Plaintiffs also believe their claims for unlawful deductions are strong.  However, Plaintiffs recognize the potential strength of the defenses Tasty would present at the decertification phase, summary judgment stage, and at trial. For one, Plaintiffs recognize that Tasty would argue Plaintiffs are independent contractors and not employees. Tasty would continue to challenge Plaintiffs' right to overtime under the FLSA based on an argument that they are otherwise exempt from overtime under outside sales and federal Motor Carrier Act exemptions because they drove vehicles with a gross vehicle weight or gross vehicle weight rating of at least 10,001 pounds. While Plaintiffs believe these exemptions do not apply, Plaintiffs acknowledge the risk that Tasty' arguments could impact their success under the FLSA and the New Jersey, Pennsylvania, and Maryland class claims at the certification/decertification stage, summary judgment, at trial, or on appeal.

Plaintiffs are also aware that Tasty would challenge their Pennsylvania, New Jersey, and Maryland deductions claims. Tasty asserts that Plaintiffs did not receive "wages" under the Pennsylvania, New Jersey or Maryland law and that the deductions are otherwise not recoverable compensation they were contractually entitled to receive under the applicable state law. Tasty also has certain authorization defenses, among others. Again, Plaintiffs believe they can defeat these arguments but recognize the risk at trial that their damages could be limited by Tasty' defenses. Finally, Plaintiffs are aware that continued maintenance of class certification and collective action certification is by no means certain given certain factually specific defenses raised by Tasty.

As part of the Settlement, each Class Member will receive a check for their pro rata share of the Settlement Amount, after payment of all attorneys' fees, expenses, Service Awards and administration costs.   The gross allocations were provided to each Class Member in their personalized notice.  After the allocations for any opt-outs are redistributed, and the court awarded

attorneys' fees, expenses, Service Awards and administration costs are deducted, Class Members will receive a check for their pro rata share of the amount remaining in the Settlement.

The terms of the proposed attorneys' fees are likewise fair and adequate. The proposed agreement provides that Tasty will not oppose a fee request of one-third of the common fund—approximately $1,050,000—plus actual litigation costs. Class Counsel has contemporaneously filed a Motion to Award Attorneys' Fees, Expenses and Service Awards to be heard during the Final Approval Hearing on August 12, 2021.  This Motion seeks $1,050,000 for attorneys' fees, $21,529.11 for litigation costs, and $20,000.00 for Service Awards ($5,000 per Class Representative). This factor is addressed at length in that Motion and adopted herein.

### 3.    The Settlement Treats Class Members Equitably Relative to Each Other

Finally, Rule 23(e)(2)(D) requires that the Court consider whether the proposed settlement treats class members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(D). This requires that the "apportionment of relief among class members takes appropriate account of differences among their claims." Fed. R. Civ. P. 23 advisory committee notes to 2018 amendment. Here, the settlement plainly meets this requirement as the settlement share for each Class Member is directly linked and tailored to their claims at issue in this litigation. The settlement share allocation is individually determined based on transactional data from each Class Member's distributorship and the number of weeks each such distributor worked within the applicable Covered Period for the asserted claims for each of the Classes. The same formula is uniformly applied to each member of the FLSA Collective and Rule 23 class to calculate the individual gross settlement payment for each Settlement Class Member. The analysis contemplates both the estimated overtime for the workweeks during the Covered Periods and the uniformly imposed  deductions during these same Covered Periods. *See Myers v. Jani-King of Philadelphia, Inc*., No. CV 09-1738, 2019 WL 4034736, at *9 (E.D. Pa. Aug. 26, 2019) (approving a distribution formula based on total payments

made by each member for franchise fees, finders fees, insurance payments, etc., made during the class period and finding "[t]his method assures that individuals who had a longer relationship with Jani-King, and thus made larger payments in fees, will ultimately receive greater compensation under the Settlement Agreement."). These gross amounts were provided to the Court in connection with Preliminary Approval.

Accordingly, all of the Rule 23(e) factors are met.

B.    **The *Girsh* Factors Support Final Approval of the Settlement.**

1.    Complexity, Expense, and Likely Duration of the Litigation

Like the analysis under Rule 23(e)(2) discussed above, the first Girsh factor requires a court to evaluate the complexity, expense, and likely duration of the litigation. This factor "captures the probable costs, in both time and money, of continued litigation." *Nat'l Football League*, 821 F.3d at 437 (quoting *Warfarin*, 391 F.3d at 535-36). As described above, if this action were to continue, the parties would likely expend a significant amount of time and money to complete discovery, including approximately 25 depositions of FLSA Collective Members, significant motion practice relating to class certification and decertification, and summary judgement - before the matter is even presented for trial or appeals.  Because continued litigation would likely be lengthy and expensive, settlement is reasonable. This factor favors approval.

2.    Reaction of the Class to the Settlement

The second *Girsh* factor asks the court to evaluate the reaction of the class to the proposed settlement agreement. "In an effort to measure the class's own reaction to the settlement's terms directly, courts look to the number of and vociferousness of the objectors." *Gen. Motors*, 55 F.3d at 812.  Here, this Motion is filed with 10 days remaining in the 60-day time period for objections or exclusion requests, but none have been received as of the filing of this Motion. To the extent any are received, they will be addressed in a supplemental filing in advance of the August 12, 2021

Final Approval hearing.   But given the current absence of any objections or opt-outs, this factor weighs heavily in favor of approval.   *See, e.g.*, *Cendant*, 264 F.3d at 234-35 (finding the second Girsh factor "weighed strongly in favor of the Settlement" where only .0008% of the class objected).

### 3.    Stage of the Proceedings and Amount of Discovery Completed

The third *Girsh* factor asks courts to evaluate the stage of the proceedings and the amount of discovery completed, in order to "determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Gen. Motors*, 55 F.3d at 813. "[P]ost discovery settlements are more likely to reflect the true value of the claim and be fair." *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 578 (E.D. Pa. 2003).  As noted above, written and document discovery was advanced in this litigation revealing strengths and weaknesses to Plaintiffs' claims and Tasty's respective defenses to those claims.  This understanding guided and informed the terms of the Settlement; thus, this factor favors approval.

### 4.    Risks of Establishing Liability and Damages

"The fourth and fifth *Girsh* factors survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *Nat'l Football League*, 821 F.3d at 439 (quoting *Prudential*, 148 F.3d at 319). As discussed above, Plaintiffs submit their FLSA, as well as their Pennsylvania, New Jersey and Maryland, claims are strong based on the assertion that Class Members were employees rather than independent contractors.  These claims, if successful, would entitled Class Members to damages in the form of unpaid overtime and reimbursement for certain allegedly unauthorized deductions from their pay.  However, Plaintiffs recognize the potential strength of the certain defenses Tasty would present challenging liability and damages under the laws applicable to some of those claims.  Beyond their challenge to the threshold issue of whether Class

Members are independent contractors rather than employees, Tasty would continue to challenge Plaintiffs' right to overtime under the FLSA based on an argument that they are otherwise exempt from overtime under outside sales and federal Motor Carrier Act exemptions because they drove vehicles with a gross vehicle weight or gross vehicle weight rating of at least 10,001 pounds. While Plaintiffs believe these exemptions do not apply, Plaintiffs acknowledge the risk that Tasty' arguments could impact their success under the FLSA and the New Jersey, Pennsylvania, and Maryland class claims at the certification/decertification stage, summary judgment, at trial, or on appeal.

Likewise, Tasty would challenge the Pennsylvania, New Jersey, and Maryland deductions claims. Tasty asserts that Plaintiffs did not receive "wages" under the Pennsylvania, New Jersey or Maryland law and that the deductions are otherwise not recoverable compensation they were contractually entitled to receive under the applicable state law. While Plaintiffs believe they can defeat these arguments, they recognize the associated risk litigating these issues and at trial where their damages could be significantly limited or eliminated by Tasty' defenses.

These factors favor approval.

### 5.   Risk of Maintaining the Class Action Through Trial

The sixth *Girsh* factor asks a court to consider the risk of maintaining the class action through trial, in order to evaluate whether the class action, "if tried, would present intractable management problems." *Id*. at 440 (quoting *Prudential*, 148 F.3d at 321).   Plaintiffs already certified the FLSA Collective, but recognize Tasty's intention to seek decertification of the FLSA Collective.  Likewise, Tasty will vigorously oppose Plaintiffs' efforts to certify the Pennsylvania, New Jersey and Maryland Classes pursuant to Rule 23 in an effort to prevent any collective recovery for Class Members.  While Plaintiffs believe they will be successful in overcoming these challenges, Tasty's arguments do not present insignificant hurdles to obtaining and maintain class

certification through trial.  These acknowledged risks support approval.

6.   Ability of Defendants to Withstand a Greater Judgment

The seventh *Girsh* factor asks courts to assess the ability of the defendants to withstand a greater judgment. This factor "is most relevant when the defendant's professed inability to pay is used to justify the amount of the settlement." *Id.* at 440.  While Tasty is financially capable of withstanding a greater monetary judgment, the reclassification of its distributors from independent contractors to employees may significantly impact Tasty's ongoing business model in a negative way. Thus this factor favors approval.

7.   Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and Range of Reasonableness of the Settlement Fund to a Possible Recovery in Light of all the Attendant Risks of Litigation

The eighth and ninth *Girsh* factors ask courts to consider "whether the settlement represents a good value for a weak case or a poor value for a strong case." *Warfarin*, 391 F.3d at 538. "The factors test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *Nat'l Football League*, 821 F.3d at 440 (quoting *Warfarin*, 391 F.3d at 538). "[T]he present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement." *Id.* (quoting *Prudential*, 148 F.3d at 322).

As noted, each Class Member will receive a pro rata payment from the Settlement Fund based on the weeks they worked during the applicable Covered Period, plus $3,500 for current distributor Class Members accepting the Amendment and Arbitration Agreement. Given that "the outcome of this litigation [remains] uncertain," and given that any continued litigation will be "inevitably time-consuming and expensive," this guaranteed substantial recovery for class members is reasonable. *See N.J. Tax Sales*, 750 F. App'x at 82. It is also "well within a reasonable

settlement range when compared with recovery percentages in other class actions." *Warfarin*, 391

F.3d at 538-39 (approving settlement for approximately 33% of best possible recovery); *Vista*

*Healthplan, Inc. v. Cephalon, Inc*., 2020 WL 1922902, at *21 (E.D. Pa. Apr. 21, 2020) (approving

settlement for approximately 11.5% of best possible recovery). These factors favor approval.

Like the Rule 23(e)(2) factors, the *Girsh* factors favor approval. For all the reasons stated

above, the settlement agreement is fair, reasonable, and adequate to protect the interests of the

class members. Plaintiff's motion to approve the settlement should be granted.

## VII.   CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court: (1) grant final

approval of the proposed Settlement finding it is fair, reasonable and adequate; (2) approve the

final plan of allocation reflecting actual payments to Class Members; (3) finally certify the FLSA

Collective Action and Rule 23(b)(3) Classes for Pennsylvania, New Jersey and Maryland for

settlement purposes only; (4) conclude the Notice Program satisfied the Class Members' Due

Process rights; and (5) dismiss the Released Claims of the Class Members with prejudice.

Respectfully submitted this 16TH day of June 2021.

| | |
|---|---|
| */s/ Simon B. Paris* | */s/ Clark Whitney* |
| Simon B. Paris, Esq. | Clark Whitney (Pa. I.D. 201052) |
| Saltz, Mongeluzzi, & Bendesky, P.C. | Ogletree, Deakins, Nash, Smoak & Stewart, P.C |
| 1650 Market Street, 52nd Floor | 1735 Market Street, Suite 3000 |
| Philadelphia, PA  19103 | Philadelphia, PA 19103 |
| T: (215) 575-3985 | P: (215) 995-2800 |
| F: (215) 496-0999 | F: (215) 995-2801 |
| sparis@smbb.com | clark.whitney@ogletreedeakins.com |
| | |
| Charles J. Kocher, Esquire (Pa. I.D. 93141) | Kevin P. Hishta (*pro hac vice*) |
| McOmber, McOmber, & Luber | 191 Peachtree Street, N.E., Suite 4800 |
| 39 E. Main St. | Atlanta, GA 30303 |
| Marlton, NJ 08053 | P: (404) 870-1733 |
| P: (856) 985-9800 | F: (404) 870-1732 |
| F: (856) 263-2450 | kevin.hishta@ogletreedeakins.com |
| cjk@njlegal.com | |
| Class Counsel | Attorneys for Defendant |