IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM CADDICK, STEPHEN HOPKINS, individually and on behalf of all similarly situated individuals, | |
| | Case No. 2:19–cv–02106–JDW |
| *Plaintiff* | |
| v. | |
| TASTY BAKING COMPANY, | |
| *Defendant* | |

MEMORANDUM

The Court must decide whether the Parties have baked a settlement agreement that is as tasty as a Tastykake. They have. After reviewing and considering the motions and related filings, and after conducting a fairness hearing, the Court will approve the settlement agreement, albeit with two small modifications, and grant Class Counsel's motion for attorneys' fees. However, the Court concludes that the confidentiality and release provisions in the settlement agreement would frustrate the purpose of the FLSA, so the Court will narrow them.

I.    BACKGROUND

A.    Factual Allegations And Procedural History

Tasty Baking Company manufactures, distributes, and sells baked products. Tasty entered into contracts with individual distributors, including William Caddick, Stephen Hopkins, Raymond Keeler, and Anthony Bertino (the "Class Reps"), who purchased

distribution rights to sell and distribute Tasty products to customers. The Class Reps operate in Pennsylvania, New Jersey, or Maryland.

Tasty classifies distributors, including the Class Reps, as independent contractors. As a result, Tasty makes certain deductions to distributors' weekly pay and does not pay them overtime. The Class Reps contend that Tasty should have classified them as employees and seek damages for unpaid overtime wages under the FLSA and reimbursement for deductions that they contend were unlawful under Pennsylvania, New Jersey, or Maryland law.

Messrs. Caddick and Hopkins filed suit in this Court on May 15, 2019, on behalf of themselves and a class of distributors. In their Complaint, they alleged claims for unpaid overtime under the FLSA, improper pay deduction under the Pennsylvania Wage Payment and Collection Law, and recovery of certain expenses under the theory of unjust enrichment. The Court dismissed Plaintiffs' unjust enrichment claim on December 17, 2019. On January 24, 2020, the Court granted a motion for conditional certification of the FLSA claims. The FLSA Collective includes "[a]ll persons in the United States who, pursuant to a 'Distributor Agreement' or a similar written contract, are or have performed work as 'Distributors' for Tasty Baking Company during the period commencing three years prior to the commencement of this action through the close of the Court-determined opt-in period and who file a consent to join this action pursuant to 29 U.S.C. § 216(b)." (ECF No. 42 at 4.) As a result, Plaintiffs provided FLSA notices, and 53 distributors opted in. The Parties conducted informal discovery, which included interrogatories on all 53 FLSA opt-in plaintiffs.

Mr. Bertino filed a separate case in the District of New Jersey, alleging class claims under the New Jersey Wage and Payment Law. On September 3, 2020, the Parties participated in a full-day mediation. The mediation covered both this case and Mr. Bertino's case. The Parties continued to negotiate after that mediation and eventually reached a compromise. After additional negotiations, the Parties agreed to broaden the scope of the settlement to include the resolution of Maryland state law claims by addendum to the original settlement agreement.

On November 17, 2020, in light of the parties' settlement discussions, the New Jersey Court transferred Mr. Bertino's action to this Court, and the Court consolidated the cases. On February 16, 2021, the Class Reps filed a Second Amended Complaint that adds Mr. Keeler as a party. Mr. Keeler brings Maryland Wage and Payment Collection Law claims on behalf of himself and a class of Maryland distributors.

B.     The Settlement

 Pursuant to the terms of the settlement, Tasty will create a total settlement fund of $3,150,000.00, which provides: (1) payments of the settlement class members; (2) fees, costs, and expenses associated with settlement administration; (3) service awards to each of the named Plaintiffs in the amount of $5,000.00 each; (4) attorneys' fees in the amount of $1,050.000.00; (5) additional payment of $3,500.00 each to current distributors who sign, date, and cash their settlement checks as consideration for agreeing to the terms of the arbitration agreement. In exchange, Plaintiffs and any members of the collective or the class who choose to participate in the settlement agree to release Tasty from any claims they could have brought under state or federal law based on the alleged

3

misclassification of putative members and FLSA collective members as independent contractors and agree to keep parts of the settlement confidential.

The Parties sought preliminary approval of the settlement agreement on February 26, 2021. On April 12, 2021, the Court granted preliminary approval of the settlement and preliminarily certified the state law classes. The classes include individuals who operated under a distribution agreement with Tasty out of a warehouse in either Pennsylvania, New Jersey, or Maryland and who did not previously sign individually, or on behalf of a business entity, a distributor agreement or an amendment containing an arbitration agreement with a class action waiver. The statute of limitations determines the relevant period for each state class.

The settlement applies to 281 potential class and collective members. The Court appointed Atticus Administration to administer the settlement, including mailing notice. Atticus mailed the class settlement notice via U.S. First Class mail to 277 absent class members (i.e., the distributors other than the Class Reps). The Postal Service returned eight of those notices to Atticus as undeliverable and without a forwarding address. Atticus performed skip tracing and obtained addresses for four of the eight. The remaining four did not receive notices. No individual objected to the class settlement. Initially, only one individual excluded himself from the class.

On June 16, 2021, the parties filed a Joint Motion for Approval of Proposed Class and Collective Action Settlement (ECF No. 70) and a Motion for Attorney Fees, Litigation Expenses, and Service Awards. The Court held a fairness hearing on August 12, 2021. At that hearing, the Court expressed concern that the settlement paid the same

compensation to class members who opted in to the FLSA Collective and to class members who did not because opt-in collective members provided released FLSA claims but class members did not. At the Court's urging, the Parties provided supplemental notice to the FLSA opt-ins who would be releasing both FLSA claims and state wage-and-hour claims to inform them that they were giving a broader release than class members who did not opt into the FLSA but getting the same compensation. That notice gave recipients a renewed opportunity to opt out or object to the settlement. No one objected, but two more class members opted out. As a result, there are 225 class members, 45 class and FLSA collective members, 4 FLSA collective members, and 4 named plaintiffs.

II.   DISCUSSION

A.   Certifications

Federal Rule of Civil Procedure 23 requires that a class action "may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). Before granting final approval on a class action, however, the Court must certify the settlement class in accordance with the Federal Rule of Civil Procedure 23. *See In re Gen. Motors Corp. Pick-Up TruckFuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 797 (3d Cir.1995). At the final fairness stage, the Court must undertake a "rigorous analysis" as to whether class certification is appropriate. *In re Nat. Football League Players Concussion Inj. Litig.,* 775 F.3d 570, 582-86 (3d Cir. 2014). Likewise, the Court must address certification of the FLSA collective before approving the proposed settlement. Usually, at the final certification stage, plaintiffs must demonstrate by a preponderance of the evidence that each opt-in plaintiff

is similarly situated to the named plaintiffs. *Alvarez v. BI Inc.*, No. 16–cv–2705, 2020 WL 1694294, at \*4 (E.D. Pa. Apr. 6, 2020) (quotation omitted). For the reasons explained below, the Court will certify state law class actions and the FLSA collective.

1.   Class certification

Under Third Circuit law, the Court must determine that the settlement class meets the requirements for class certification under Rule 23(a) and (b), "and must separately determine that the settlement is fair to the class under Rule 23(e)." *NFL Concussion Litig.*, 775 F.3d at 581. At the preliminary approval stage, the Court preliminarily certified the Pennsylvania, Maryland, and New Jersey classes. For the reasons stated in the Court's memorandum granting preliminary approval (ECF No. 66), the Pennsylvania, Maryland, and New Jersey classes meet the class certification requirements under Rule 23(a) and (b), even under the more rigorous final-fairness-stage standard. The Court will therefore certify state classes for settlement purposes.

2.   Collective certification

"It is clear from the statutory text of the FLSA that the standard to be applied on final certification is whether the proposed collective plaintiffs are similarly situated." *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012). Relevant factors include, but are not limited to, "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment." *Id.* at 536-37. "[C]ertification under the FLSA is less

stringent than certification of a Rule 23 class." *Hall v. Accolade, Inc.*, No. CV 17–3423, 2020 WL 1477688, at *7 (E.D. Pa. Mar. 25, 2020) (citing another source).

All members of the proposed collective work as distributors for Tasty. They all allege that Tasty classified its distributors as independent contractors rather than as employees. As a result, they all seek damages in the form of unpaid overtime work under the FLSA. Finally, all of the collective members have the same circumstances of employment—they are all subject to the same policies and standards and perform the same job duties. The Court will therefore certify the FLSA collective.

B.     Notice

"A court must determine that notice was appropriate before evaluating the merits of the settlement itself." *In re Am. Invs. Life Ins. Co. Annuity Mktg. & Sales Pracs. Litig.*, 263 F.R.D. 226, 237 (E.D. Pa. 2009). This notice is to be given to all potential members of a Rule 23(b)(3) class. Such notice

> must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The settlement administrator distributed notices to all class members. In its preliminary approval determination, the Court concluded that "the notice program is robust and is likely to ensure that all members receive notice of the claims and their rights with respect to the settlement." (ECF No. 66 at 19.) The notice program provided for individualized notices to each class member, explained the details of the litigation

and the proposed settlement, allowed for settlement participants to raise objections to and opt-out from the settlement. Moreover, after verifying recipients' addresses, over 98% of the class members received their personalized notice by direct mail. In addition, the parties provided supplemental notice after the final approval hearing to ensure that opt-ins understood the scope of the release that they are providing. The Court concludes that Plaintiffs have provided sufficient evidence of compliance with the notice requirements.

C.   Final Settlement Approval

1.   Class action

Before granting final approval, a court must determine that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). This requires a court to "independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished." *In re Cendant*, 264 F.3d 201, 231 (3d Cir. 2001) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995)).

"[T]here is an overriding public interest in settling class action litigation," *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004), and "[t]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation," *Gen. Motors*, 55 F.3d at 784. Accordingly, "when evaluating a settlement, a court should be 'hesitant to undo an agreement that has resolved a hard-fought, multi-year litigation.' " *In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig.*, 333 F.R.D. 364, 378 (E.D. Pa. 2019) (quoting *In*

8

re Baby Prods. Antitrust Litig., 708 F.3d 163, 175 (3d Cir. 2013)). "The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." In re Nat'l Football League Players Concussion Injury Litig., 821 F.3d 410, 436 (3d Cir. 2016) (quoting In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 299 (3d Cir. 1998)).

In determining whether a proposed class action settlement is fair, reasonable, and adequate, courts consider whether:

> (A)   the class representatives and class counsel have adequately represented the class;
>
> (B)   the proposal was negotiated at arm's length;
>
> (C)   the relief provided for the class is adequate, taking into account:
>
> > (i)    the costs, risks, and delay of trial and appeal;
> >
> > (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and
> >
> > (iv)   any agreement required to be identified under Rule 23(e)(3); and
>
> (D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23.

The factors set forth in Rule 23(e)(2) augment, rather than replace, the traditional factors that courts have developed to assess the fairness of a class action settlement. See Fed. R. Civ. P. 23(e)(2) Advisory Committee Note. In the Third Circuit, courts apply the nine-factor test outlined in Girsh v. Jepson, 521 F.2d 153 (3d Cir.1975), to assess whether a proposed settlement is fair and reasonable:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater settlement; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of the attendant risks of litigation.

*Id.* at 157. Although there is some overlap between Rule 23(e) and *Girsh* factors, the Court will consider each below.

      **a.**     Rule 23(e) factors

          i.     Adequacy of representation and arm's length

                   negotiation

Class counsel and Class Reps have adequately represented the class throughout the case. Class Reps assert the same claims as class members and continue to fully participate in the case. Likewise, class counsel has experience with class litigation and, prior to reaching this settlement, demonstrated their adequacy though their work prosecuting this case.

The parties agreed to settle this case after engaging in discovery "including reviewing and analyzing a substantial volume of documents, Tasty's business model, the bakery delivery business and the nature of the distributors' work." (ECF No. 70-1 at 16.) Based on this, counsel evaluated the strengths and weaknesses of the claims and defenses before reaching the proposed settlement agreement. The parties also agreed to settle this case after a full-day mediation session and a series of calls with a mediator. "[T]he participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion

between the parties." *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, No. 15-2460, 2016 WL 4766079, at *6 (E.D. Pa. Sept. 13, 2016) (citation and quotation omitted). As a result, this factor weighs in favor of final approval of the settlement agreement.

ii.   Adequacy of relief

The "relief that the settlement is expected to provide to class members" is adequate when weighed against "the cost and risk involved in pursuing a litigated outcome." Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018). This analysis "cannot be done with arithmetic accuracy, but it can provide a benchmark for comparison with the settlement figure." *Id.* Class counsel asserts that, absent settlement, the parties would likely incur significant additional costs, including to complete discovery and motion practice relating to class certification and decertification and to brief summary judgment. Additionally, Plaintiffs acknowledge that they face significant litigation risk, including in establishing that they are employees and not independent contractors and that they receive "wages" under Pennsylvania, New Jersey, and Maryland law. Given these risks and potential costs, the settlement is reasonable.

A court also must "scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims. . . [and] should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018).  The settlement agreement does not require that any class member file a claim. Rather, unless members opted out, each member will receive a check for a prorated share of the settlement amount.

Finally, as discussed in greater detail below, the requested attorneys' fees and the service awards are reasonable. The proposed attorneys' fees are $1,050,000.00 out of $3,150,000.00, approximately 33%.  That percentage is within the range of reasonable fees approved by courts in this Circuit. *See, e.g., Williams v. Aramark Sports, LLC*, No. CIV.A. 10-1044, 2011 WL 4018205, at *10 (E.D. Pa. Sept. 9, 2011). No class members have objected to the proposed fees or service awards. Thus, this factor weighs in favor of approving the proposed settlement agreement.

   iii.   Whether the proposal treats class members
        equitably relative to each other

This factor requires that that "apportionment of relief among class members takes appropriate account of differences among their claims. . . ." Fed. R. Civ.  23 advisory committee notes to 2018 amendment. Under the settlement agreement, each class member receives an allocation based on transactional data and the number of weeks each distributor worked within the applicable covered period. This formula contemplates both the estimated overtime that any individual class member worked during the covered period and any estimated deduction.  The settlement agreement applies that formula to each class and FLSA collective member on a uniform basis. Thus, while class members might receive different amounts, the same formula determines each of their recoveries. Because the proposed settlement treats class members equitably relative to each other, this factor weighs in favor of preliminary approval. Accordingly, Plaintiffs satisfy all of the factors under Rule 23(e).

    **b.**    *Girsh* factors

        i.    Complexity, expense, and likely duration of the litigation

The first *Girsh* factor "captures the probable costs, in both time and money, of continued litigation." *Cendant*, 264 F.3d at 233. If litigation continued, the parties would have to complete discovery, engage in extensive motion practice relating to class certification and summary judgment, and prepare for trial. Thus, the complexity, expense and likely duration of this class action weigh in favor of approving class settlement.

        ii.    The reaction of the class to the settlement

"The second *Girsh* factor attempts to gauge whether members of the class support the settlement." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004) (quoting another source). This factor favors approval because no one objected to the settlement agreement and only three opted out.

        iii.    The stage of the proceedings and the amount of discovery completed

"The third *Girsh* factor captures the degree of case development that class counsel [had] accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Warfarin*, 391 F.3d at 537. "[F]ormal discovery is not a requirement for the third *Girsh* factor. What matters is not the amount or type of discovery class counsel pursued, but whether they had developed enough information about the case to appreciate sufficiently the value of the claims." *NFL Concussion Litig.*, 821 F.3d at 439 (3d Cir. 2016). Class counsel completed sufficient discovery, including reviewing and

analyzing Tasty's business model, the bakery delivery business, and the nature of the distributors' work, to appreciate the merits of the case before negotiating. Therefore, this factor weighs in favor of approving the settlement.

iv.      The risk of establishing liability and damages

"The fourth and fifth *Girsh* factors survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *Id.* (quoting another source). As noted earlier, Plaintiffs face risks if they proceed with the action. As a threshold matter, Tasty asserts that it would challenge Plaintiffs' contention that they are employees rather than independent contractors.  Tasty also asserts that it would challenge Plaintiffs' right to FLSA overtime under the Motor Carrier Act exemption and would argue that Plaintiffs did not receive "wages" under the Pennsylvania, New Jersey, or Maryland law. These issues are fact-intensive, which increases the risk that a jury could find for Tasty. As a result, this factor weighs in favor of approving the settlement.

v.      The risks of maintaining the class action through the trial

This factor "measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." *Warfarin*, 391 F.3d at 537. But in a settlement class context, "the court can always claim this factor weighs in favor of settlement" because "there will always be a risk or possibility of decertification." *Prudential*, 148 F.3d at 299. Consequently, this factor "deserve[s] only minimal consideration." *NFL Concussion Litig.*, 821 F.3d at 440. Nevertheless, Tasty would likely oppose certification of the class and

14

could also seek to decertify the class prior to trial. On balance, therefore, this factor weighs in favor of approving the settlement.

vi.      Tasty's ability to withstand a greater judgment

"The seventh *Girsh* factor considers whether the defendants could withstand a judgment for an amount significantly greater than the [s]ettlement." *Warfarin*, 391 F.3d at 537–38 (quoting another source). Tasty concedes that it is financially capable of withstanding a greater monetary judgement. But this factor alone does not undermine the reasonableness of the settlement because "in any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the … settlement." *NFL Concussion Litig.,* 821 F.3d at 440.

vii.      The range of reasonableness of the settlement fund in light of the best possible recovery and in light of all the attendant risks of litigation

The eight and ninth *Girsh* factors evaluate "whether the settlement represents a good value for a weak case or a poor value for a strong case." *Warfarin*, 391 F.3d at 538. "The factors test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *NFL Concussion Litig.,* 821 F.3d at 440 (quoting *Warfarin*, 391 F.3d at 538). "[T]he present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement." *Id.* (quoting *Prudential*, 148 F.3d at 322). Each class member will

15

receive a prorated payment from the settlement fund based on the weeks he worked during the applicable covered period. Although it is possible that class members would receive more if they were to proceed with litigation and succeed at trial, that outcome is not guaranteed. Moreover, continued litigation will be time-consuming and expensive. Thus, a guaranteed substantial recovery for class members is reasonable. As a result, the settlement agreement is fair, reasonable, and adequate under both Rule 23(e) and *Girsh* factors alike.

2.    FLSA factors

When evaluating a collective action settlement of FLSA claims, district courts must determine whether the "compromise reached is a fair and reasonable resolution of a bona fide dispute over FLSA provisions, rather than a mere waiver of statutory rights brought about by an employer's overreaching." *See Kraus v. PA Fit II, LLC*, 155 F. Supp.3d 516, 522-23 (E.D. Pa. 2016) (quotations omitted). Thus, settlement approvals proceed in three steps. First, a court must determine whether the settlement concerns a bona fide dispute.  Next, it must assess whether the settlement is fair and reasonable. And finally, it must determine that the settlement does not frustrate the FLSA's purpose. *See Kauffman v. U-Haul Int'l, Inc.*, No. 16-cv-4580, 2019 WL 1785453, at *2 (E.D. Pa. Apr. 24, 2019) (citation omitted).

"A proposed settlement resolves a bona fide dispute where its terms 'reflect a reasonable compromise over issues, such as … back wages, that are actually in dispute.'" *Kraus*, 155 F. Supp. 3d. at 523 (quotation omitted).  "A dispute is 'bona fide' where it involves 'factual issues rather than legal issues such as the statute's coverage and

applicability.'" *Flores v. Eagle Diner Corp.*, No. 18-cv-1206, 2019 WL 3943355, at * 9 (E.D. Pa. Aug. 21, 2019) (quotation omitted).  As explained at the preliminary approval stage this case presents a bona fide dispute. (*See* ECF No. 66.). Plaintiffs submitted a claim for unpaid overtime wages under the FLSA based on Tasty misclassifying them as independent contractors. Tasty maintains that plaintiffs are independent contractors and are not entitled to FLSA overtime pursuant to the Motor Carrier Act exemption. Had this matter not settled, resolution of these issues would have involved a fact-intensive inquiry.

The Court likewise concludes that the settlement is fair and reasonable. Courts in this Circuit look to the *Girsh* factors to evaluate whether the proposed settlement is fair and reasonable. As explained above, the *Girsh* factors support approving the settlement.

Finally, the Court must determine whether the proposed settlement furthers or impermissibly frustrates the implementation of the FLSA in the workplace. Generally, courts find that all-encompassing release provisions that preclude plaintiffs from raising unrelated claims against their employer are too broad and frustrate FLSA's purpose. *See, e.g. Solkoff v. Pennsylvania State Univ.*, 435 F. Supp. 3d 646, 660 (E.D. Pa. 2020); *Howard v. Philadelphia Hous. Auth.*, 197 F. Supp. 3d 773, 779 (E.D. Pa. 2016). But release provisions that limit future claims to the specific litigation are sufficiently narrow to pass muster. *See, e.g., O'Mara v. Creative Waste Sols., LLC*, No. CV 19-2021, 2020 WL 2513571, at *6 (E.D. Pa. May 15, 2020); *Singleton v. First Student Mgmt. LLC*, No. CIV.A. 13-1744 JEI, 2014 WL 3865853, at *9 (D.N.J. Aug. 6, 2014). The release provision

17

here releases Tasty from "any and all FLSA claims in addition to all claims. . ." based on the alleged misclassification of plaintiffs as independent contractors. (ECF No 62–2 at ¶ 3.24.) Because the release includes all FLSA claims, including claims for future violations, it is too broad and frustrates the purpose of the FLSA. The Court will limit the scope of the release to claims under the FLSA concerning classification of distributors as independent contractors.

In its preliminary approval memorandum, the Court approved the settlement, excepting the confidentiality clause found in section 15.12 of the agreement. The Court explained that "[g]enerally, confidentiality agreements that prohibit plaintiffs from discussing settlement agreements with their coworkers are too broad and frustrate FLSA's purpose." (ECF No. 66 at 17). Because the confidentially agreement at issue in this case prohibits plaintiffs from disclosing their settlement amounts to anyone, including to their coworkers, the Court concluded that "[i]n its current state, the confidentially agreement is too broad." (*Id*.)

The parties have not cured this deficiency. The confidentiality provision in its current form still prohibits collective members from disclosing their settlement amount. The Court cannot approve a confidentiality provision that prohibits Plaintiffs from sharing information about the settlement agreement. For these reasons, the Court approves the settlement agreement except the confidentiality clause.

D.      Attorneys' Fees and Expenses

1.      Attorneys' fees

Courts in the Third Circuit generally use either the percentage-of-recovery or lodestar method for determining attorneys' fees. *See In re Diet Drugs Product Liability Litigation*, 582 F.3d 524, 540 (3d Cir. 2009). Courts favor the percentage of recovery method in cases involving a common fund in wage and hour cases like this one. *See General Motors*, 55 F. 3d at 821; *Mabry v. Hildebrandt*, No. 14-cv-5525, 2015 WL 5025810, at * 3 (E.D. Pa. Aug. 24, 2015). "[T]he percentage of the recovery award in FLSA common fund cases ranges from roughly 20-45%." *Id.* (collecting cases). Courts apply the following ten factors to determine if the fee produced is reasonable: (1) the amount of the value created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiff's counsel; (7) the awards in similar cases; (8) the value of the benefits generated by class counsel compares to those generated by outside groups; (9) the fee that would have been generated by a privately negotiated contingent-fee agreement; and (10) any innovative terms of settlement. *Diet Drugs*, 582 F.3d at 541 (3d Cir. 2009) (citing *Gunter v. Ridgewood Energy Corp.*, 223 F. 3d 190, 195 (3d Cir. 2000) and *Prudential*, 158 F. 3d at 336-40).

In requesting one-third of the gross settlement fund, class counsel seeks an award in the middle of the usual range. Moreover, the requested fee is reasonable in light of each of the ten factors:

(1) Counsel is requesting roughly 33% fee out of a total settlement fund of $3,150,000. After fees, expenses, and the service awards, 281 class and/or collective members will benefit from $2,058,471 in the fund;

(2) Only three individuals opted-out of the class, and no one filed any objections to the settlement or proposed attorneys' fees;

(3) Class counsel are qualified and experienced advocates in class litigation, including employment litigation, and demonstrated their skills to the Court's satisfaction;

(4) This factor supports approval because this is a hybrid litigation involving FLSA collective-action and class action wage-law claims from three different states;

(5) Class counsel invested considerable resources into this case with no guarantee that they would recover those costs given that they were retained on a contingency fee basis;

(6) Class counsel have spent 950 hours on this litigation;

(7) Courts in this Circuit have awarded fee awards in the range of 25% to 40% of the fund;

(8) The Court is unaware of any parallel litigation, and class counsel relied on their own work and effort to resolve this dispute;

(9)     Contingency fees generally range between 30% and 40%, so this factor

favors approval because the proposed percentage of the fee in this case

is at the low end of this range;

(10)    The settlement also features non-monetary terms, including creating

alternative dispute resolution processes for Tasty's distributors.

Because this is a "mainstream case," the Court will also perform a lodestar crosscheck. *See Gunter*, 223 F. 3d at 195 n.1. To determine the lodestar award, the Court multiplies the number of hours the attorneys reasonably worked on the case by "a reasonable hourly billing rate for such services given the geographical area, the nature of the services provided, and the experience of the lawyer." *Id.* "[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied[.]" *In re Prudential Ins.*, 148 F.3d at 341 (quotation omitted). The lodestar crosscheck confirms that the requested attorneys' fees are reasonable. Class counsel calculated lodestar of $475,280.00 upon their usual hourly billing rates. However, because the Court must analyze whether the rates are reasonable in light of the geographical area, the nature of the services provided, and the experience of the lawyers, the Court has utilized the fee schedule developed by Philadelphia Community Legal Services and calculated a lodestar of $456,757.00.[1] If the fee award to Class counsel is $1,050,000.00 as requested, the lodestar multiplier will be 2.20 using Plaintiffs' lodestar and 2.29 using the CLS schedule. Both multipliers fall within the

---

[1] *See* Community Legal Services of Philadelphia, Attorney Fees, *available at* https://clsphila.org/about-community-legal-services/attorney-fees/.

generally accepted range and confirm the reasonableness of the fee award. Thus, the Court will approve the proposed fee.

### 2. Expenses

"Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *Vista Healthplan, Inc. v. Cephalon, Inc.*, 2020 WL 1922902, at *32 (E.D. Pa. Apr. 21, 2020) (quote omitted). Class counsel has adequately documented their expenses, which amount to a total of $21,529.00 and comprise costs associated with, among other things, providing notice to the FLSA collective and pre-settlement mediation. Thus, the Court will approve the proposed Class counsel's recoupment of costs.

### 3. Service awards

Service awards, also known as incentive awards, enhancement awards, or service payments, "are common in class actions that result in a common fund for distribution to the class" and are meant "to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation." *Alvarez v.  BI Inc.*, No. 16-cv-2705, 2020 WL 1694294, at *6 (E.D. Pa. Apr. 6, 2020) (quotation omitted). "[W]here the proposed incentive award comes out of the common fund independent of attorneys' fees, as it does here, the court must 'carefully review' the request for fairness to other class members." *Id.* (citation omitted). The Court cannot approve such awards "without a substantial basis to demonstrate that the

individual[s] provided services for the Class and incurred risks during the course of the litigation." *Id.* (quotation omitted).

The $5,000.00 awards for Class Reps are fair and reasonable as there is a substantial basis to establish the services they provided during litigation. As this Court has noted before, individuals who serve as named plaintiffs in employment rights cases do so at the risk of their current and future employment. *See Weirbach v. Cellular Connection, LLC*, No. 5:19-CV-05310-JDW, 2020 WL 6581498, at *5 (E.D. Pa. Nov. 10, 2020). Aside from taking the risk, Class Reps also provided invaluable service in aid of Plaintiffs' prosecution of the matter—sitting for extensive pre-suit interviews, providing crucial documents, submitting declarations, giving insight into Tasty's defenses, and making themselves available for the full-day mediation. Service awards are warranted, and a modest award of $5,000.00 is within the range of similar awards approved in other collective/class action sin this district. *See id.* The Court will therefore award the requested service awards.

III.   CONCLUSION

The Court will approve the settlement agreement, including the service awards to the Class Reps and attorneys' fees and expenses. But the Court will narrow the confidentiality and release provisions of the Settlement Agreement. An appropriate Order follows.

BY THE COURT:

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

October 27, 2021