IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WILLIAM CADDICK and STEPHEN HOPKINS, individually and on behalf of all similarly situated individuals,**<br><br>*Plaintiffs,*<br><br>v.<br><br>**TASTY BAKING COMPANY,**<br><br>*Defendant.* | Case No. 2:19-cv-02106-JDW |

## MEMORANDUM

Class Counsel in this case has proven unable to work out among themselves how to allocate the attorneys' fees that the Court has awarded them. Their dispute arises because no one seems willing to acknowledge the other side's contributions. To hear the lawyers from Saltz, Mongeluzzi & Bendesky, P.C. ("SMB") tell it, they did all the real work in the case and only permitted lawyers from McOmber, McOmber & Luber, P.C. ("MML") and from Winebrake & Santillo, LLC ("W&S") to participate to be nice. MML, on the other hand, suggests that all three firms were on the front lines of the case, arm in arm, making equal contributions. The truth, not surprisingly, is somewhere in between—a fact that the Court believes that Class Counsel could and should have acknowledged if they had worked together to resolve this fee dispute. Instead, they put it before the Court. For the reasons explained below, the Court adopts a fee allocation that differs from either side's

proposal and that does its best to account for the role that each firm played in prosecuting the case.

## I.     BACKGROUND

When Plaintiffs filed this case, four lawyers from SMB appeared on the complaint, including Simon Paris and Charles Kocher. At the early stages of the case, the parties submitted to the Court a report of their meeting under Fed. R. Civ. P. 26(f). In that report, they listed Mr. Kocher as Plaintiffs' lead counsel. Mr. Kocher appeared on behalf of Plaintiffs at the Rule 16 conference that the Court conducted, and he handled the case for SMB through much of discovery, including briefing a motion for conditional certification.

In June 2020, Mr. Kocher left SMB for MML. The two firms agreed that Mr. Kocher and MML would work together on this case, with SMB to take the lead. Per that agreement, SMB had MML handle several tasks, including preparation of discovery requests, analysis of damages data including for use at mediation, and preparing a settlement allocation based on that data. In addition, after moving to MML, Mr. Kocher continued his role as the point of contact with the named plaintiffs.

The parties mediated this case in September 2020. It appears that both SMB and MML participated in that mediation. The parties reached agreement on a settlement in October 2020. MML does not claim to have had a role in the post-mediation settlement negotiations, so the Court infers that SMB took the lead in those negotiations. However, throughout the negotiations, Mr. Kocher remained the point of contact for the named

plaintiffs. The Court held a fairness hearing on August 12, 2021. Mr. Paris of SMB handled the hearing for Plaintiffs. After the hearing, the Court raised concerns about the notice program, and the parties provided certain members of the collective with supplemental notice. Mr. Paris took the lead on the briefing of that issue, and SMB appears to have handled the legal issues around the supplemental notice program.

On October 27, 2021, the Court approved the settlement and awarded $1.05 million in attorneys' fees for Class Counsel. SMB and W&S agreed that W&S would receive $26,013, which reflected a 1.3 multiplier on the time that W&S invested in the case. But MML and SMB could not agree on how to split the remaining fees. On November 10, 2021, MML sent the Court a letter asking for the Court's assistance in resolving the dispute After briefing, the issue is now ripe.

## II. ANALYSIS

In awarding multiple firms a fee in a class or collective action, a court must determine a "reasonable and fair allocation of the aggregate award," with a "focus on the relative contributions of each firm." *In re Initial Pub. Offering Sec. Litig.*, Case No. No. 21-MC-92 (SAS), 2011 WL 2732563, at *7-8 (S.D.N.Y. July 8, 2011) (cleaned up). "District courts routinely give lead counsel the initial responsibility of devising a fee allocation proposal 'as they deem appropriate, based on their assessments of class counsel's relative contributions.'" *Id.* (quote omitted). Lead counsel's proposals "are often afforded substantial deference." *Id.*; *see Brown v. Am. Home Prods. Corp.* (*In re Diet Drugs*

*(Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*), No. CIV. A. 99-20593, 2003 WL 21641958, at *6 (E.D. Pa. May 15, 2003). That is because "lead counsel is typically well-positioned to weigh the relative merit of other counsel's contributions." *Victor* v. *Argent Classic Convertible Arbitrage Fund L.P.*, 623 F.3d, 82, 90 (2d Cir. 2010). At the same time, the Court must still "engage[ ] in a reasonable analysis" of the fee request, mindful of the fact that "lead counsel has an incentive to undercompensate non-lead counsel, as such compensation typically decreases lead counsel's own recovery." *Id.* at 89-90.

As these standards make clear, the allocation of fees is more art than science, as it requires subjective judgments about the value of each firm's contributions. In making those judgments, a court must consider the risk that a firm took when expending hours, the value that the hours generated, and the difficulty of the work that the firm performed (and the value that the hours therefore added). There's also the financial outlay (or at least commitment) that a firm makes in support of a case. As anyone who has analyzed contingency work knows, outlays of hard costs are the point where the rubber meets the road for many firms. Ultimately, in making any determination, a court must ensure that an award reflect a firm's "monetary risk, investment and substantive work performed." *In re Initial Pub. Offering Sec. Litig.*, 2011 WL 2732563, at * 5; *see also Turner v. Murphy Oil USA, Inc.*, 582 F> Supp.2d 787, 808-099 (E.D. La. 2008).

Applying these standards here, the Court concludes that SMB is entitled to a premium above what MML (or W&S) will receive. SMB took the case at the outset, when

4

its outcome was uncertain. It handled more challenging work, including discovery and briefing collective certification. In addition, once it partnered with MML, it maintained its status as the lead firm, and its lawyers took the lead at the approval hearings. However, the Court also acknowledges that MML made some substantial contributions to the resolution of the case. In particular, MML claims, and SMB does not dispute, that Mr. Kocher was the primary, if not only, point of contact for the named plaintiffs. He communicated with them about the settlement proposals, answered any questions that they had, and ensured that they supported the settlement. The role of client contact was a vital one. When Mr. Kocher left, SMB could have had a new lawyer take over the relationship with the clients, but building that rapport takes time, and there's no guarantee it will work. Instead of trying to do that, SMB continued to rely on Mr. Kocher's relationships with the clients, a recognition of the value that Mr. Kocher brought to the table. Although MML points to other work that it did in the case, the Court concludes that the other work was less significant and required less substantive skill. It is therefore entitled to less weight.

     In its submissions, MML argues that the Court should allocate fees in proportion to the hours that each firm worked, without considering any other factors. But an award based solely on the hours invested would not reflect the risk that each firm took nor the value that each firm added. To the extent that MML is suggesting that the Court must award fees on a pro rata basis, courts disagree and have recognized that different law

firms in a case can receive awards with different multipliers on their lodestars. *See, e.g., In re Initial Pub. Offering Sec. Litig.*, 2011 WL 2732563, at *5 (different multipliers for executive committee firms and Steering Committee firms).

SMB's submission, on the other hand, plays up its own role at the expense of MML. Although SMB does not dispute that Mr. Kocher was the named plaintiffs' point of contact, it does not recognize the value of that contribution. It claims that it "would have achieved the same result in this litigation" even if had not partnered with MML. (ECF No. 83 at 1.) And maybe that's true. But logic suggests that SMB did not include MML out of the goodness of its heart. It did so because it saw value from something that MML had to offer—most likely Mr. Kocher's continuing relationship with the clients. SMB also downplays the significance of its agreement to pay W&S a fee with a multiplier of 1.3. Although that might have been a settlement discussion, it was also an arms'-length offer. More importantly, it sets a baseline for the multiplier that MML should receive, and the evidence shows that MML made a more valuable contribution to the case's resolution than W&S did.

This analysis suggests that MML should receive a share of the fees that is more than SMB has offered but less than it seeks. The Court will award it $130,350, which is a multiplier of 1.5 on its lodestar. Because SMB and W&S have agreed that W&S will receive $26,013, that leaves a fee award of $893,637 for SMB, which results in a multiplier of

6

approximately 1.96. These relative awards reflect the contributions that each firm made to the case.

## III. CONCLUSION

There's no formula for the allocation of fees. That's why the Court would prefer lawyers who work on a case to determine the fairest allocation. They're the ones who know what everyone did. The Court's allocation takes into consideration the various risks that each firm assumed in prosecuting this case and the contributions that each firm made. It reaches a conclusion that the lawyers in the case could have reached themselves, if they had only tried. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

January 12, 2022